**OZARK WHOLESALE BEVERAGE COMPANY d/b/a Paramount Liquor Company of Springfield, Respondent,**

v.

**SUPERVISOR OF LIQUOR CONTROL, Appellant.**

No. WD 60496.

Missouri Court of Appeals,
Western District.

July 16, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Jefferson City, for Appellant.

Charles E. Smarr, Mark G. Anderson, Jefferson City, for Respondent.

Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

The Supervisor of Liquor Control (Liquor Control) appeals from the judgment of the Circuit Court of Cole County reversing the decision of the Administrative Hearing Commission (AHC) that the respondent, Ozark Wholesale Beverage Company (Ozark), d.b.a. Paramount Liquor Company of Springfield, had violated 11 C.S.R. § 70–2.050(4),[1] governing "Wholesalers' Conduct of Business," and was, therefore, subject to having its wholesale liquor license disciplined by the assessment by Liquor Control of a civil penalty of $500.

■ Ozark raises one point on appeal.[2] It claims that the AHC erred in deciding that Ozark had violated 11 C.S.R. § 70–2.050(4) by delivering intoxicating liquor with an alcohol content of more than five percent (5%) to a retailer who possessed an original package liquor license, issued pursuant to § 311.200, to sell intoxicating liquor in excess of 3.2%, but not in excess of 5%, and a Sunday sales license, issued pursuant to § 311.293,[3] because § 311.293.1 provides for the issuance of an original package liquor license that permits the sale of *all* intoxicating liquors on Sunday.

We reverse the judgment of the circuit court reversing the decision of the AHC with directions to enter judgment in accordance with the decision of the AHC.

### Facts

Ozark is a wholesale beverage company, which possesses a valid liquor wholesale

1. All regulatory references are to the Missouri Code of State Regulations (2000), unless otherwise indicated.

2. Although this is an appeal from the judgment of the circuit court, which, in reversing the decision of the AHC, found for Ozark, because we review the decision of the AHC, which found for Liquor Control, Ozark is required to file the appellant's brief. Rule 84.05(e), Missouri Rules of Civil Procedure (2001).

3. All statutory references are to RSMo 2000, unless otherwise indicated.

solicitor's license issued by Liquor Control, authorizing it to sell and deliver intoxicating liquors to retailers in Missouri. From October 17, 1997, through October 30, 1998, Ozark sold and delivered intoxicating liquors with an alcohol content of more than 5% to Opal Fanning in Lamar, Missouri, d.b.a. Tobacco Hill, whose primary business was selling cigars and tobacco. During this period of time, Tobacco Hill possessed a "5% Original Package license," as authorized by § 311.200.2, which permitted her to sell malt liquor containing more than 3.2% and no greater than 5% alcohol by weight. Tobacco Hill also possessed a Sunday sales license, as provided by § 311.293.1, that authorized her to sell intoxicating liquor between 11:00 a.m. and midnight on Sundays.

On December 2, 1998, an agent with Liquor Control, Nicholas Huckstep, conducted a routine inspection of Tobacco Hill. During this inspection, Agent Huckstep found intoxicating liquor containing more than 5% alcohol. After reviewing various wholesale invoices of liquor delivered to Tobacco Hill, Agent Huckstep determined that Ozark was one of two wholesalers that had been delivering intoxicating liquor to Tobacco Hill which exceeded, according to Liquor Control, the liquor licenses that Tobacco Hill possessed. After further investigation, Agent Huckstep cited Ozark for unlawfully delivering intoxicating liquor with an alcohol content of more than 5% to Tobacco Hill in violation of 11 C.S.R. § 70–2.050(4).[4]

On March 11, 1999, Liquor Control imposed a civil penalty against Ozark of $500, in accordance with § 311.680.2, which was to be paid on or before April 12, 1999. On April 9, 1999, pursuant to § 311.691, Ozark filed its "Complaint and Motion for Stay" with the AHC, seeking a determination of whether Ozark had violated 11 C.S.R. § 70–2.050(4). On May 4, 1999, Liquor Control filed its answer to Ozark's complaint. Ozark's complaint was heard by the AHC on April 17, 2000. On August 23, 2000, the AHC entered its order finding that Ozark was in violation of 11 C.S.R. § 70–2.050(4) and subject to discipline for unlawfully delivering to Tobacco Hill intoxicating liquor containing alcohol of greater than 5%. On November 7, 2000, based upon the decision of the AHC, Liquor Control entered an order re-imposing the $500 civil penalty initially imposed on March 11, 1999, with payment made due on December 11, 2000.

On December 4, 2000, pursuant to § 536.110, Ozark filed a "Petition for Review and Motion for Stay" in the Circuit Court of Cole County. The Supervisor filed its answer to Ozark's petition on December 21, 2000. The case was submitted on briefs and oral argument. On August 22, 2001, the trial court issued its findings of fact and conclusions of law, and entered its judgment reversing the decision of the AHC.

This appeal follows.

### Standard of Review

"Our review is of the decision of the AHC, not the decision of the trial court." *Dir., State Dep't of Pub. Safety v. Murr,* 11 S.W.3d 91, 95 (Mo.App.2000) (citation omitted). Final decisions of the AHC shall be subject to judicial review as

---

4. 11 C.S.R. § 70–2.050(4) (2000) provides:
 No wholesaler licensee shall deliver or cause intoxicating liquors, wine or nonintoxicating beer to be delivered to any premises unless there shall be displayed prominently in the premises a license issued by the supervisor of liquor control to the person purchasing the liquor, wine or beer, designating the purchaser as a person, licensed to sell on the premises the kind of liquor or beer s/he is about to deliver.

provided by § 536.140. § 621.145. Our review under § 536.140 is to determine whether the challenged action of the administrative agency in question:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

When the AHC's decision is based on its interpretation and application of the law, as is the case here, we review its conclusions of law and decision *de novo*. *Sprint Communications Co., L.P. v. Dir. of Revenue*, 64 S.W.3d 832, 834 (Mo. *banc* 2002).

## I.

In its sole point on appeal, Ozark claims that the AHC erred in deciding that Ozark had violated 11 C.S.R. § 70–2.050(4) by delivering intoxicating liquor with an alcohol content of more than 5% to Tobacco Hill who possessed an original package liquor license, issued pursuant to § 311.200.2, permitting the sale of malt liquor containing alcohol in excess of 3.2%, but not in excess of 5%, and a Sunday sales license, issued pursuant to § 311.293.1, because that section must be read as authorizing the issuance of original package liquor licenses permitting the sale of *all* intoxicating liquors on Sunday. Specifically, Ozark claims that it was not in violation of 11 C.S.R. § 70–2.050(4) for the unlawful sale and delivery of intoxicating liquor to a retailer, as alleged by Liquor Control, in that Tobacco Hill was licensed to sell the intoxicating liquor in question. In support of its claim, Ozark contends that despite the fact that Tobacco Hill only had a license to sell malt liquor containing alcohol in excess of 3.2%, but not in excess of 5%, Monday through Saturday, its Sunday sales license permitted it to sell *all* intoxicating liquor on Sunday.

Liquor Control defends Ozark's claim on several bases, including its contention that a Sunday sales license issued pursuant to § 311.293.1 only permits the sale of the same intoxicating liquor authorized by a retailer's "primary" liquor license issued pursuant to § 311.200 such that Tobacco Hill's Sunday sales license only permitted it to sell malt liquor containing alcohol in excess of 3.2%, but not in excess of 5%. From this, it asserts that it was a violation of 11 C.S.R. § 70–2.050(4) for Ozark to sell and deliver to Tobacco Hill any intoxicating liquor containing alcohol in excess of 5%.

The "Liquor Control Law," § 311.010, is found in Chapter 311. Section 311.050 of the law makes it "unlawful for any person, firm, partnership or corporation to manufacture, sell or expose for sale in this state *intoxicating liquor, as defined in section 311.020*, in any quantity, without taking out a license." (Emphasis added.) Section 311.020 defines "intoxicating liquor," for purposes of Chapter 311, as:

alcohol for beverage purposes, alcoholic, spirituous, vinous, fermented, malt, or other liquors, or combination of liquors, a part of which is spirituous, vinous, or fermented, and all preparations or mixtures for beverage purposes, containing in excess of one-half of one percent by volume except for nonintoxicating beer as defined in section 312.010, RSMo.

There is no dispute that at the time of the alleged violation by Ozark, Tobacco Hill had an original package liquor license issued pursuant to § 311.200.2 and a "spe-

cial license" for Sunday sales of original package liquor issued pursuant to § 311.293.1. Section 311.200.2 provides for an original package liquor license authorizing "the sale of malt liquor containing alcohol in excess of 3.2% by weight and not in excess of 5%." [5] Section 311.293.1 provides for the issuance of a special license for the sale of "intoxicating liquor" on Sundays between the hours of 11:00 a.m. and midnight. Ozark contends that because § 311.293.1 references the sale of "intoxicating liquor," without any language of limitation, a Sunday sales license necessarily authorizes the sale of all intoxicating liquor, as defined in § 311.020, which would include the intoxicating liquor it was charged with delivering to Tobacco Hill in violation of 11 C.S.R. § 70–2.050(4). Liquor Control, however, argues that § 311.293.1 must be read in conjunction with § 311.200 and § 311.290, and, when it is, it is clear that it only authorizes the sale on Sundays of those intoxicating liquors authorized by the retailer's primary license, issued pursuant to § 311.200. Thus, as framed by the parties, the issue we must decide on appeal is whether § 311.293.1 provides for a special liquor license authorizing a retailer to sell all

---

**5.** Section 311.200 provides:

1. No license shall be issued for the sale of intoxicating liquor in the original package, not to be consumed upon the premises where sold, except to a person engaged in, and to be used in connection with, the operation of one or more of the following businesses: A drug store, a cigar and tobacco store, a grocery store, a general merchandise store, a confectionery or delicatessen store, nor to any such person who does not have and keep in his store a stock of goods having a value according to invoices of at least one thousand dollars, exclusive of fixtures and intoxicating liquors. Under such license, no intoxicating liquor shall be consumed on the premises where sold nor shall any original package be opened on the premises of the vendor except as otherwise provided in this law. For every license for sale at retail in the original package, the licensee shall pay to the director of revenue the sum of one hundred dollars per year.

2. For a permit authorizing the sale of malt liquor containing alcohol in excess of three and two-tenths percent by weight and not in excess of five percent by weight by grocers and other merchants and dealers in the original package direct to consumers but not for resale, fifteen dollars per year. The phrase "original package" shall be construed and held to refer to any package containing three or more standard bottles of beer. This license shall also permit the holders thereof to sell nonintoxicating beer in the original package direct to consumers, but not for resale.

3. For every license issued for the sale of malt liquor and light wines containing not in excess of fourteen percent of alcohol by weight made exclusively from grapes, berries and other fruits and vegetables, at retail by the drink for consumption on the premises where sold, the licensee shall pay to the director of revenue the sum of thirty-five dollars per year, which license shall also permit the holder thereof to sell nonintoxicating beer as defined in chapter 312, RSMo.

4. For every license issued for the sale of all kinds of intoxicating liquor, at retail by the drink for consumption on premises of the licensee, the licensee shall pay to the director of revenue the sum of three hundred dollars per year, which shall include the sale of intoxicating liquor in the original package.

5. For every license issued to any railroad company, railway sleeping car company operated in this state, for sale of all kinds of intoxicating liquor, as defined in this chapter, at retail for consumption on its dining cars, buffet cars and observation cars, the sum of one hundred dollars per year; except that such license shall not permit sales at retail to be made while such cars are stopped at any station. A duplicate of such license shall be posted in every car where such beverage is sold or served, for which the licensee shall pay a fee of one dollar for each duplicate license.

6. All applications for licenses shall be made upon such forms and in such manner as the supervisor of liquor control shall prescribe. No license shall be issued until the sum prescribed by this section for such license shall be paid to the director of revenue.

intoxicating liquors on Sundays or only those intoxicating liquors authorized for sale by the retailer's primary liquor license, issued under § 311.200.

■■■ In interpreting statutes, we are to ascertain the intent of the legislature, giving the language used its plain and ordinary meaning. *Pavlica v. Dir. of Revenue,* 71 S.W.3d 186, 189 (Mo.App.2002). Where the legislative intent is made evident from the plain and ordinary meaning of the language used, we are without authority to read into the statute a contrary intent. *Id.* " 'When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied.' " *Id.* (citation omitted).

■■ There is no dispute that, as Ozark contends, § 311.293.1 provides for the issuance of a "special license" to sell "intoxicating liquor" on Sundays. In that regard, it reads, in pertinent part:

> Notwithstanding the provisions of section 311.290 or any other law to the contrary, any person possessing the qualifications and meeting the requirements of this chapter, who is licensed to sell *intoxicating liquor* in the original package at retail under section 311.200, may apply to the supervisor of liquor control for a special license to sell *intoxicating liquor* in the original package at retail between the hours of 11:00 a.m. and midnight on Sundays.

§ 311.293.1 (emphasis added). As we noted, *supra,* however, there is a dispute over whether in referring to the sale of "intoxicating liquor," the legislature intended in § 311.293.1 to include the sale of all intoxicating liquors found within the definition of that phrase in § 311.020, as Ozark contends, or whether it intended to include only the sale of those intoxicating liquors otherwise authorized by a liquor license issued pursuant to § 311.200, as Liquor Control contends. In arguing as it does, Ozark relies on the fact that in referencing "intoxicating liquor" in § 311.293.1, the legislature did not include any terms of limitation or restriction. Thus, as Ozark suggests, looking at § 311.293.1 in isolation and given the definition of "intoxicating liquor" found in § 311.020, one would tend to believe that the legislature intended that a licensee under § 311.293.1 be licensed to sell all intoxicating liquors. However, as Liquor Control points out, § 311.293.1 cannot be read in isolation.

Section 311.293.1 begins with the phrase: "Notwithstanding the provisions of section 311.290 or any other law to the contrary." "Notwithstanding" is defined in the dictionary as "[d]espite; in spite of." BLACKS LAW DICTIONARY 1091 (7th ed.1999). This language of § 311.293.1 indicates that it was meant to except, in whole or part, the provisions of § 311.290. Section 311.290 [6] sets forth the time limitations for the sale of intoxicating liquor under a license issued pursuant to § 311.200, and expressly prohibits any Sunday sales.

6. Section 311.290 provides:

1. No person having a license under this law, nor any employee of such person, except as provided in subsection 2 of this section, shall sell, give away, or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquor in any quantity between the hours of 1:30 a.m. and 6:00 a.m. on weekdays and between the hours of 1:30 a.m. Sunday and 6:00 a.m. Monday. If the person has a license to sell intoxicating

liquor by the drink, his premises shall be and remain a closed place as defined in this section between the hours of 1:30 a.m. and 6:00 a.m. on weekdays and between the hours of 1:30 a.m. Sunday and 6:00 a.m. Monday. Where such licenses authorizing the sale of intoxicating liquor by the drink are held by clubs or hotels, this section shall apply only to the room or rooms in which intoxicating liquor is dispensed; and where such licenses are held by restaurants whose business is

Thus, reading § 311.293.1 in conjunction with § 311.290, as we must, given the express language of § 311.293.1 directing us to § 311.290, it is clear and unambiguous that the legislature only intended for the provisions of § 311.293.1 to affect "when" intoxicating liquor, that was licensed under § 311.200, could be sold, not "what" intoxicating liquor could be sold. This interpretation is in complete harmony with the fact that the legislature expressly limited the issuance of Sunday sales licenses under § 311.293.1 to those "person[s] possessing the qualifications and meeting the requirements of this chapter, who [are] licensed to sell intoxicating liquor in the original package at retail under section 311.200." In other words, when giving the language used its plain and ordinary meaning, the legislature is simply saying in § 311.293.1 that whatever "intoxicating liquor" a person is licensed to sell pursuant to a license issued under § 311.200, that person can obtain a special license under § 311.293.1 to extend the licensee's hours of sales from those hours that are allowed in § 311.290.

Given our interpretation of § 311.293.1, contrary to Ozark's argument, Tobacco Hill was not licensed to sell intoxicating liquor containing more than 5% alcohol pursuant to its Sunday sales license. Thus, Ozark's delivery of such intoxicating liquor to Tobacco Hill violated 11 C.S.R. § 70-2.050(4) such that Ozark's wholesaler's liquor license was subject to disciplining by Liquor Control. Hence, Ozark's claim that the AHC's decision was unauthorized by law is without merit.

 Point denied.[7]

## Conclusion

The judgment of the circuit court reversing the decision of the AHC upholding Liquor Control's disciplining Ozark's wholesaler's liquor license is reversed and remanded with directions for the court to enter judgment in accordance with the decision of the AHC. *Psychiatric Healthcare v. Soc. Servs.*, 996 S.W.2d 733, 739 (Mo. App.1999).

HOWARD, P.J., and NEWTON, J., concur.

---

conducted in one room only and substantial quantities of food and merchandise other than intoxicating liquors are dispensed, then the licensee shall keep securely locked during the hours and on the days specified in this section all refrigerators, cabinets, cases, boxes, and taps from which intoxicating liquor is dispensed. A "closed place" is defined to mean a place where all doors are locked and where no patrons are in the place or about the premises. Any person violating any provision of this section shall be deemed guilty of a class A misdemeanor. Nothing in this section shall be construed to prohibit the sale or delivery of any intoxicating liquor during any of the hours or on any of the days specified in this section by a wholesaler licensed under the provisions of section 311.180 to a person licensed to sell the intoxicating liquor at retail.

2. Any person licensed pursuant to section 311.200 shall not be permitted to sell, give away, or otherwise dispose of, or suffer the same to be done upon or about his premises, any intoxicating liquor in any quantity between the hours of 1:30 a.m. and 6:00 a.m. on weekdays and between the hours of 1:30 a.m. Sunday and 6:00 a.m. Monday.

7. In its argument of its point relied on, Ozark also argues that Liquor Control's "policy" of treating a Sunday sales license as a "secondary" license to a license issued pursuant to § 311.200 was one of general applicability, which constituted a rule, requiring it to be promulgated as such in accordance with § 536.021, and because it was not, it was void. This issue, which has no merit on its face, was not raised in Ozark's point relied on. An issue not raised in the point relied on is considered abandoned. *Nelson v. Nelson*, 25 S.W.3d 511, 524 (Mo.App.2000).