Linda STOTTS and Rhonda Knouse, Respondents,

v.

**PROGRESSIVE CLASSIC INSURANCE COMPANY, Appellant.**

**No. WD 61738.**

Missouri Court of Appeals, Western District.

Nov. 4, 2003.

Dana M. Harris, Kansas City, MO, for Appellant.

George S. Miller, Gladstone, MO, for Respondents.

Before LOWENSTEIN, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Progressive Classic Insurance Company appeals from the circuit court's *denial* of its motion for summary judgment and the *grant* of summary judgment to the respondents, Linda Stotts and Rhonda Knouse, on their petition for breach of contract and for vexatious refusal to pay with respect to their claim for uninsured motorist benefits under a motor vehicle policy purchased by Stotts (Stotts policy) from the appellant. The respondents' claim against the appellant arose out of a motor vehicle accident involving Stotts' vehicle and a vehicle driven by Christopher J. Schlosser and owned by Matthew T. James, which resulted in the death of the respondents' mother. The respondents filed a wrongful death suit in the Circuit Court of Clay County against Schlosser, which was settled for $225,000. In addition to seeking damages in their wrongful death action, the respondents also sought payment of benefits under the uninsured motorist coverage provided in the Stotts policy. The appellant denied coverage, resulting in the present action.

The appellant raises two points on appeal. In Point I, it claims that the trial court erred in *overruling* its motion for summary judgment on the respondents' petition for breach of contract and vexatious refusal to pay, seeking the payment of benefits under the uninsured motorist coverage of the policy, because the summary judgment record shows that the respondents, after an adequate period of discovery, had not produced and would not be able to produce evidence establishing the requisite proof element of its claims that there was coverage under the policy for their claimed loss. The appellant makes the same claim in Point II, except in the context that the trial court erred in *sustaining* the respondents' motion for summary judgment. In Point I, the appellant claims that to the extent the respondents were relying on a theory of negligent entrustment to establish uninsured motorist coverage, it was entitled to judgment as a matter of law in that it was undisputed from the summary judgment record that the respondents could not show that James, the owner of the vehicle Schlosser was driving in the accident, knew or should have known that Schlosser was an incompetent or careless driver. In Point II, the appellant claims that the respondents were not entitled to summary judgment in that to make a *prima facie* case for summary judgment on their petition, the respondents were required, but failed, to allege, *inter alia*, uncontroverted facts demonstrating that the motor vehicle driven by Schlosser was an "uninsured motor vehicle" for purposes of the policy and § 379.203,[1] governing uninsured motor vehicle coverage.

We reverse and remand.

## Facts

On September 14, 2000, Stotts was operating her vehicle near the intersection of

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Main Street and N.W. 81st Street in Kansas City, Clay County, Missouri, when it was struck by James' vehicle, which at the time was driven by Schlosser. Stotts' mother, Norma Knouse, who was a passenger in the vehicle, died as a result of the injuries she sustained in the accident. Although Schlosser had a liability policy covering the accident, James did not.

A wrongful death suit was filed by the respondents in the Circuit Court of Clay County against Schlosser for his alleged negligence in operating the James' vehicle. The respondents' claims against Schlosser arising out of the accident were settled by his insurance carrier for $225,000.

At the time of the accident, Stotts had a motor vehicle liability insurance policy issued by the appellant. This policy contained an "uninsured motorist" provision which provided coverage for damages "which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." The respondents filed a claim with the appellant seeking payment of uninsured motorist benefits under the policy for the wrongful death of their mother, which was denied.

On February 7, 2001, the respondents filed a petition in the Circuit Court of Clay County against the appellant for breach of contract and vexatious refusal to pay for failing to pay the respondents' claim. In their petition, they alleged that their claim was covered under the uninsured motorist provision of the policy in that Schlosser negligently operated the James' vehicle causing the death of the respondents' mother and that, at the time of the accident, the vehicle was uninsured. They also alleged that James negligently entrusted his vehicle to Schlosser, contributing to cause the death of the respondents' mother.

The appellant filed a motion for summary judgment and suggestions in support thereof on June 27, 2001, alleging, *inter alia*, that there was no coverage for the respondents' claim under the policy because, at the time of the accident, the James' vehicle was not an uninsured vehicle in that Schlosser maintained a liability policy covering the accident. On August 3, 2001, the respondents filed their response to the appellant's motion for summary judgment and a motion for *partial* summary judgment.

The parties' competing motions for summary judgment were taken up and heard on August 29, 2001. On August 30, 2001, the trial court entered its order denying the appellant's motion and granting the respondents'. On February 27, 2002, the parties appeared before the court and stipulated and agreed for the record that the appellant intended to appeal the trial court's rulings on the parties' motions and that those rulings should be certified by the court for early appeal, there being no just reason for delay, and in the event the respondents prevailed on appeal, judgment would be entered by the trial court for the respondents in the amount of $25,000, policy limits, with interest of 9% per annum from March 5, 2002. On March 11, 2002, the trial court entered its "order," which reads:

> Parties represented by counsel. Stipulation read into record. There is an agreement that there is no just reason for delay regarding the court's granting of Partial Summary Judgment in favor of [the respondents] on August 30, 2001 and denying [the appellant's] Motion for Summary Judgment; the parties further agree that portion of the Judgment is final for purposes of appeal; and further that in the event [the respondents] prevail on appeal, then judgment in the sum of $25,000 plus interest at the rate of 9% from March 5, 2002 shall be entered in

favor of [the respondents] and against [the appellant].

The appeal of this order to this court was dismissed, without opinion, in WD 61123, on June 20, 2002, the court finding that the appeal was taken "from an order that [was] neither final nor otherwise appealable pursuant to section 512.020 RSMo. 2000 and Rule 74.01(a), '[a] judgment is entered when a writing signed by the judge and denominated "judgment" is filed.'"

The trial court, on July 2, 2002, entered its "judgment," which reads:

> Parties represented by counsel. There is no just reason for delay regarding the court's granting of Partial Summary Judgment in favor of [the respondents] on August 30, 2001 and denying [the appellant's] Motion for Summary Judgment; this portion of the Judgment is final for purposes of appeal, and in the event [the respondents] prevail on appeal, then judgment in the sum of $25,000 plus interest at the rate of 9% from March 5, 2002 shall be entered in favor of [the respondents] and against [the appellant].

This appeal followed.

## Standard of Review

Our review of the trial court's grant of summary judgment is essentially *de novo.* *Sloss v. Gerstner,* 98 S.W.3d 893, 895 (Mo. App.2003) (*citing ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993)). We employ the same criteria used by the trial court in determining the propriety of sustaining the motion initially. *Id.* Because summary judgment is founded on the record submitted and the law, the propriety of summary judgment is purely an issue of

law such that we do not defer to the trial court's grant of summary judgment. *Id.*

We will affirm the trial court's grant of summary judgment if we find that: (1) there is no genuine dispute of material fact; and (2) that on those facts, the movant is entitled to judgment as a matter of law. *Id.* In considering whether that standard has been met, we review the record in the light most favorable to the non-movant and accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

## Appellate Jurisdiction

■ As in every case, before addressing the merits of the appellant's claim, we first must determine, *sua sponte,* our jurisdiction. *Bituminous Cas. Corp. v. Moore,* 64 S.W.3d 356, 357 (Mo.App.2002).

■ This appeal is from the trial court's "judgment" of July 2, 2002. By its express terms, it was not a final and appealable judgment in that it only disposed of the liability issues concerning the respondents' claims and left the entry of judgment as to the issue of damages for a later date if the respondents' prevailed on appeal. Partial summary judgment for the plaintiff on the issue of liability alone is interlocutory in character, Rule 74.04(c)(6),[2] and is not a final judgment subject to appellate review, *Shelter Mut. Ins. Co. v. Vulgamott,* 96 S.W.3d 96, 105 (Mo.App.2003). And, the attempt by the trial court to certify the case for early appeal under Rule 74.01(b), by stating that "[t]here is no just reason for delay regarding the court's granting of Partial Summary Judgment in favor of [the respondents]," was ineffective in that the rule has no application unless one complete claim is

**2.** All rule references are to Missouri Rules of Civil Procedure, 2003, unless otherwise indicated.

resolved, *Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 82 (Mo. App.2000), which did not occur here. Without a final judgment, we would, of course, be caused to dismiss. *Shelter Mut. Ins. Co.*, 96 S.W.3d at 106. However, while this appeal was pending, the parties stipulated in writing to the amendment of the summary judgment to include damages for the respondents in the amount of $25,000 plus interest, rendering the trial court's judgment a final and appealable judgment for our review.

## I.

Our disposition of the appellant's Point I is dependent on our disposition of Point II. Thus, logically, we must address Point II first.

In Point II, the appellant claims that the trial court erred in granting summary judgment to the respondents on their petition for breach of contract and vexatious refusal to pay, seeking the payment of benefits under the "uninsured motorist coverage" of Stotts' motor vehicle policy with the appellant, because on the undisputed material facts alleged in the motion, the respondents did not demonstrate that they were entitled to judgment as a matter of law. Specifically, the appellant claims that to make a *prima facie* case for summary judgment on their petition, the respondents were required, but failed, to allege, *inter alia*, uncontroverted facts demonstrating that the motor vehicle driven by Schlosser was an "uninsured motor vehicle" for purposes of the policy and § 379.203, mandating uninsured motor vehicle coverage in Missouri.

To be entitled to summary judgment under Rule 74.04, the movant must show that: (1) there is no genuine dispute as to the material facts on which he relies for summary judgment; and (2) based on those facts, he is entitled to judgment as a

matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 380. Where the movant is a claimant, as in our case, to make a *prima facie* case for summary judgment, he is required to state with particularity in his motion all the undisputed material facts necessary to establish each and every element of his claim, referencing the pleadings, discovery, or affidavits that demonstrate the lack of a genuine issue as to those facts. Rule 74.04(c)(1); *ITT Commercial Fin.*, 854 S.W.2d at 381.

■ To establish their claims for breach for non-payment and vexatious refusal to pay with respect to the uninsured motorist coverage provided in Stotts' policy, the respondents had to show that: (1) the policy was delivered to Stotts; (2) that the policy was in effect at the time of the accident killing the respondents' mother; (3) the claimed loss for the wrongful death of the respondents' mother was a covered loss under the policy; and (4) that there was notice and proof of loss given to the appellant as provided in the policy. *Valentine–Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo.App.1999). With respect to these elements of proof, it is undisputed that the loss claimed by the respondents for the wrongful death of their mother resulted from the collision between the vehicles driven by Stotts and Schlosser and that the policy was in force at the time of the collision. Likewise, the respondents did not raise in their motion the issue of notice and proof of loss. The proof element under attack in the respondents' motion is whether the claimed loss for the wrongful death of the respondents' mother was a covered loss under the policy.

In the Stotts policy, the appellant agreed, in return for the payment of the applicable premium, to pay for:

damages, other than punitive or exemplary damages, which an **insured per-**

son is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person;** and

2. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle.**

There is no dispute on appeal that under the terms of the policy, the respondents' mother was an "insured person" who sustained bodily injury in the accident, resulting in her death. There is also no dispute that the respondents were legally entitled to recover from Schlosser for the death of their mother. The coverage dispute is over whether the vehicle driven by Schlosser and owned by James was an "uninsured motor vehicle" at the time of the accident.

An "uninsured motor vehicle" is defined in the policy as:

[a] land motor vehicle or trailer of any type:

a. to which no **bodily injury** liability bond or policy applies at the time of the **accident;**

b. to which a **bodily injury** liability bond or policy applies at the time of the **accident,** but the bonding or insuring company:

    i. denies coverage; or

    ii. is or becomes insolvent within two (2) years after the date of the **accident; or**

c. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury,** provided that the **insured person,** or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident.**

The appellant contends, *inter alia,* that pursuant to this language, the James' vehicle driven by Schlosser was not an uninsured motor vehicle in that it was undisputed that Schlosser had an operator's liability policy that provided coverage for his operation of the vehicle at the time of the accident.

■■■■ The interpretation to be given a contract on undisputed facts is a question of law. *Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo.,* 985 S.W.2d 903, 908 (Mo.App.1999). In interpreting an insurance contract, we are to read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written. *Kyte v. Am. Family Mut. Ins. Co.,* 92 S.W.3d 295, 298–99 (Mo.App.2002). In doing so, we are to give the language used in the insurance contract its plain and ordinary meaning. *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.,* 62 S.W.3d 633, 638 (Mo.App.2001). If giving the language used its plain and ordinary meaning the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract. *Kyte,* 92 S.W.3d at 298. The mere fact that the parties disagree over the interpretation of the terms of a contract does not create an ambiguity. *Id.* at 299. "An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract." *Id.*

Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layperson who bought and paid for the policy. Therefore, if an ambiguity exists, the language of the policy will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy.

*Lincoln County Ambulance v. Pac. Employers Ins.*, 15 S.W.3d 739, 743 (Mo.App. 1998) (citations omitted).

> If a term is specifically defined in an insurance policy, courts will normally look to that definition and nowhere else to determine its meaning. However, in order for the contract definition to necessarily control, the definition itself must be reasonably clear and unambiguous. Otherwise, an appellate court is free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured.

*Mansion Hills*, 62 S.W.3d at 638. (Citations omitted.)

■ As noted, *supra*, the uninsured motorist provisions of the Stotts policy expressly provides that a motor vehicle is considered uninsured where "no bodily injury liability bond or policy applies at the time of the accident." Giving that language its plain and ordinary meaning, it is clear and unambiguous that if any liability policy provided coverage for the James' vehicle at the time of the accident, it was not uninsured for purposes of the uninsured motorist coverage of the Stotts policy. Thus, because it is undisputed that Schlosser had a liability policy that covered his negligent operation of the James' vehicle at the time of the accident, the vehicle was not an "uninsured motor vehicle" under the express terms of the policy. Hence, based solely on the express language of the policy, there would be no uninsured motorist coverage under the Stotts policy for the respondents' claimed loss for the wrongful death of their mother.

■ Despite there being no uninsured motorist coverage under the express terms of the Stotts' policy, the respondents contend that § 379.203 mandates coverage as a matter of public policy. In that regard, they argue that the statute must be read as requiring uninsured motorist coverage: (1) where either the operator or owner of the vehicle does not carry a liability policy on the subject vehicle, regardless of whose negligence caused the accident; or (2) where, regardless of the fact that the operator carries a liability policy on the subject vehicle, the owner does not, and it can be shown that the owner negligently entrusted the vehicle to the driver. We would agree with the respondents' contention that a provision in an insurance contract will not be enforced as written if it violates the law or public policy, specifically, in this case § 379.203. *Interstate Agri Servs., Inc. v. Bank Midwest, N.A.*, 982 S.W.2d 796, 800 (Mo.App.1998). However, the question is whether § 379.203 mandates coverage in one or both of the situations touted by the respondent.

■ Section 379.203 reads, in pertinent part:

1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, or in the case of any commercial motor vehicle, as defined in section 301.010, RSMo, any employer having a fleet of five or more passenger vehicles, such coverage is offered therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bod-

ily injury, sickness or disease, including death, resulting therefrom. In interpreting this statute:

> we are to ascertain the intent of the legislature, giving the language used its plain and ordinary meaning. Where the legislative intent is made evident from the plain and ordinary meaning of the language used, we are without authority to read into the statute a contrary intent. When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied.

*Ozark Wholesale Beverage Co. v. Supervisor of Liquor Control*, 80 S.W.3d 491, 497 (Mo.App.2002). *Id.* (citations omitted). Applying this standard, we read § 379.203 as mandating uninsured motorist coverage if: (1) the insured is legally entitled to recover damages in tort from the owner or operator of the vehicle for causing bodily injury, sickness or disease, including death; and (2) the vehicle, at the time of the accident, was uninsured by a liability policy of insurance. The first proof element speaks in tort, whereas the second element speaks in contract. As this court said in *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 136 (Mo.App. 2000):

> It is well settled that the right of the injured party to recover from an uninsured motorist carrier arises from the insurance contract rather than in tort. Uninsured motorist insurance cases combine tort liability and contract liability into one action. The obligation of the uninsured motorist to respond in money damages is governed by tort rules and that of the insurer is governed by contract.

(Citations omitted).

The respondent argues that the "owner or operator" language of the statute should be interpreted such that regardless of whose fault is alleged in causing the accident in question, the owner's or operator's, if the subject vehicle is not covered by either an owner's or operator's policy of insurance at the time of the accident, the vehicle is considered uninsured for purposes of § 379.203. In other words, the respondent is arguing that the "owner or operator" language of the statute references the contract proof element of an uninsured motorist action, whether the subject vehicle was insured for purposes of the uninsured motorist policy. We disagree. The statutory language of "who are legally entitled to recover damages," clearly references the tort proof element, which, in turn, is modified by the prepositional phrase, "from owners or operators," indicating the parties against whom there is an entitlement to recover in tort. Because the "owner or operator" language of the statute does not reference the contract proof element of whether the subject vehicle is an uninsured vehicle for purposes of mandating uninsured motorist coverage, the mere fact that either the "owner or operator" of the subject vehicle *did not have a policy of insurance* covering the vehicle at the time of the accident is not dispositive of the issue whether the vehicle is considered uninsured for purposes of § 379.203. Logically, for the same rationale, we do not read § 379.203 as *not* mandating uninsured motorist coverage based on the mere fact that either the "owner or operator" *did have a policy of insurance* covering the vehicle at the time of the accident, as the appellant contends.

As this court has previously held in *Arnold v. American Family Mut. Ins. Co.*, 987 S.W.2d 537, 540–41 (Mo.App. 1999), the issue of whether a vehicle is considered uninsured, for purposes of § 379.203, does not turn solely on whether

there was an owner's or operator's policy in effect at the time of the accident. Rather, it turns on the underlying tort liability alleged and whether there is coverage for that particular tort. *Id.* There, like here, although an operator's policy was in effect at the time of the accident covering the operator's negligence in operating the subject vehicle, there was not an owner's policy covering the owner's negligent entrustment of the vehicle to the operator, which was alleged to have caused or contributed to cause the damages sought. Citing both *Hendrickson v. Cumpton,* 632 S.W.2d 512, 515 (Mo.App.1982) and *Heafner v. Safeco Nat'l Ins. Co.,* 613 S.W.2d 478, 479 (Mo. App.1981), the *Arnold* court held that, under § 379.203 a motor vehicle is considered uninsured, mandating uninsured motorist coverage, where there is not an owner's policy covering the owner's negligence, even though an operator's policy was in effect covering the operator's negligent operation of the vehicle. *Arnold,* 987 S.W.2d at 541.

In relying on *Hendrickson* and *Heafner,* it is clear that in *Arnold* this court was following the *"Heafner* rule," which we previously followed in *Hendrickson. Arnold,* 987 S.W.2d at 541; *see Hendrickson,* 632 S.W.2d at 515. However, the *Arnold* court, in responding to the insurer's argument that *Hendrickson* and *Heafner* were in conflict with the Missouri Supreme Court's opinion in *Harrison v. MFA Mut. Ins. Co.* 607 S.W.2d 137, 143 (Mo. *banc* 1980), opined that "[w]e do not find that [*Harrison*] governs here." *Arnold,* 987 S.W.2d at 541. That observation is curious inasmuch as the *Heafner* rule is expressly predicated on the Missouri Supreme Court's decision in *Harrison. Heafner,* 613 S.W.2d at 480. In that regard, the *Heafner* court stated:

> We remain persuaded by defendant Safeco's argument that the purpose behind § 379.203, RSMo.1978, is to afford the same protection to a party injured by an uninsured motorist as would be available if the offending vehicle was covered by a standard liability insurance policy. However, our Missouri Supreme Court has recognized and recently reaffirmed that § 379.203, RSMo.1978, is an 'uninsured motor vehicle' statute, not an 'uninsured motorist' statute. We have, therefore, determined that because defendant Shy owned the automobile, and carried no insurance on same as protection against his negligent acts concerning such ownership, there existed no automobile liability insurance policy which insured this vehicle.

*Id.* This apparent inconsistency concerning the role of *Harrison* in the promulgation of the *Heafner* rule matters not, however, in that the interpretation of § 379.203, on which the *Heafner* rule is based, is, in fact, supported by *Harrison.*

In *Harrison,* the Missouri Supreme Court was presented with the issue of whether the household exclusion clause of an automobile liability insurance policy, excluding coverage for bodily injury to family members of the insured, residing in the same household as the insured, entitled the plaintiff family members to claim coverage, under the express provisions of the uninsured motorist section of the policy or as a matter of public policy under § 379.203. 607 S.W.2d at 139. The plaintiffs were seeking payment from the insurer for injuries they sustained in a one-vehicle accident in which the insured, the husband and father of the plaintiffs, was killed due to his negligent operation of the vehicle. *Id.* As in our case, the seminal issue in the case was whether the insured's vehicle was an insured vehicle for purposes of the uninsured motorist coverage of the policy. *Id.* at 140. The *Harrison* court found that by policy definition, which was determined not to be ambiguous as argued

by the plaintiffs, the subject vehicle was an insured vehicle in that the insured had a liability policy in effect at the time of the accident covering his negligent operation of the vehicle such that the plaintiffs were "ineligible to recover damages under the 'uninsured motorist insurance' section of the policy." *Id.*

In finding that the policy definition of an uninsured vehicle did not violate the public policy of § 379.203, the *Harrison* Court first dispelled the notion that the statute only spoke to "uninsured motorists." *Id.* at 143. In that regard, the Court found that although the statute contained shorthand references to "uninsured motorist," the legislative purpose of the statute was to protect against both an *owner or operator of an uninsured vehicle*, not to protect against an *uninsured motorist*. *Id.* In other words, the "focus [of the statute] is on the *uninsured vehicle* and not on whether the owner or operator is an *'uninsured motorist'* under the circumstances of an accident." *Id.* (emphasis in original text). The Court also made it crystal clear that "uninsured motorist" and "uninsured motor vehicle" are not interchangeable in the statute. *Id.* at 143–44. Thus, *Harrison* teaches us that the contract element of the mandated uninsured motorist coverage of § 379.203, that the subject vehicle is uninsured, can be satisfied where either the owner or operator does not have a liability policy insuring the vehicle. In that vein, the Court held: "We conclude that the term [uninsured motor vehicle] as used by the legislature refers to a vehicle whose operator or owner did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident." *Id.* at 144. At first blush, this would seem to support the respondent's position, that the mere fact the owner in our case did not have a liability policy on the subject vehicle in effect at the time of the accident, the

vehicle was considered uninsured and uninsured motorist coverage was mandated by § 379.203, regardless of the alleged underlying tortuous act. However, the respondent's position ignores what the *Harrison* Court had to say about the tort element of § 379.203, that the insured is legally entitled to recover damages in tort from the owner or operator of the vehicle for causing bodily injury, sickness or disease, including death, which must be found to trigger the statute's coverage mandate. The Court, quoting favorably from *Webb v. State Farm Mut. Auto. Ins. Co.*, 479 S.W.2d 148, 152 (Mo.App.1972), held that: "It is the public policy of Missouri established by the uninsured motorist statute, then, that each insured under such coverage have available the full statutory minimum *to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law." Harrison,* 607 S.W.2d at 145 (emphasis in original text). The Court then concluded that because the "tortfeasor, did in fact have an automobile liability policy which complied with the requirements of Motor Vehicle Safety Responsibility Law … the uninsured motorist statute [had] no application." *Id.* We read this discussion as being consistent with the *Heafner* rule in that it implicitly recognizes that in determining whether the contract element of § 379.203 is satisfied, depends on whether the underlying tortfeasor, from whom the injured party would have been able to recover in tort and who should have had a liability policy in place insuring the subject vehicle against his tortuous act, is the owner or operator of the subject vehicle. In other words, if the tortfeasor is an operator, then the vehicle is uninsured if there is not a liability policy covering the tortfeasor's negligent operation of the vehicle; or if the tortfeasor is an owner, the vehicle is unin-

sured if there is not a liability policy covering the owner's negligent acts in causing the accident. Hence, despite what this court said in *Arnold*, that *Harrison* did not govern in answering the issue presented in *Arnold* and here, we believe that *Harrison* supports the *Heafner* rule, as adopted by this court first in *Hendrickson* and then in *Arnold*.[3]

In our case, there is no dispute that there was an operator's policy that covered Schlosser's negligent operation of the James' vehicle. As such, the James' vehicle was not an uninsured motor vehicle, for purposes of § 379.203, with respect to Schlosser's negligent operation of the vehicle in causing the accident that resulted in the respondents' mother's death. Hence, uninsured motorist coverage was not available to the respondents with respect to Schlosser's negligent operation of the James' vehicle. However, as discussed, *supra*, the respondents, relying on the *Heafner* rule, contend that such coverage would be mandated by § 379.203 with respect to the accident causing the respondents' mother's death if it could be shown that it was caused, at least, in part by James' negligent entrustment of his vehicle to Schlosser. Of course, as the appellant's claim on appeal, to make a *prima facie* case for summary judgment on that basis, the respondents, as claimants, were required to allege undisputed material facts in their motion that demonstrated that James negligently entrusted his vehicle to Schlosser, which directly caused or contributed to cause the respondents' loss. Without such allegations of fact in their motion for summary judgment, given the undisputed circumstances of this case, the

trial court could not conclude as a matter of law that there was uninsured motorist coverage, a requisite proof element of the respondents' breach of contract claim.

■ The essential elements of a negligent entrustment action are (1) that the entrustee is incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) that the entrustor knew or had reason to know of the entrustee's incompetence; (3) that there was an entrustment of the chattel; and (4) that the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to plaintiff. *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 578 (Mo.App.1998). In their motion for summary judgment, the respondents alleged as undisputed material facts:

13. Attached hereto as Exhibit 1 is a true and accurate copy of the policy of insurance which was issued by defendant to plaintiff Linda Stotts.

14. Attached hereto as Exhibit 2 is a true and accurate copy of the police report which relates to the motor vehicle collisions which involved Norma Knouse.

15. The Progressive policy states that Progressive "will pay for damages, other than punitive or exemplary damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury."

16. Norma Knouse was an insured person because she was "occupying a covered vehicle." (See Exhibits 1 and 2).

17. As a result of the motor vehicle collision described in Exhibit 2, Norma

---

**3.** In ruling that the determination of whether the subject vehicle is uninsured, for purposes of § 379.203, is contingent on whether the underlying tortfeasor is the owner or operator of the vehicle, we are mindful of the fact that "[i]t is not the purpose of the statute to re-

quire dual coverage." *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132, 137 (Mo.App.1984). In other words, § 379.203 cannot be invoked to allow recovery for damages otherwise covered by a liability policy.

Knouse suffered a bodily injury which resulted in her death.

18. The vehicle operated by Chris Schlosser was not insured under any automobile liability insurance policy. (See Defendant's Statement of Uncontroverted Facts, paragraph 5.)

19. The vehicle that struck the motor vehicle in which Norma Krouse was a passenger was an uninsured motor vehicle because at the time of the accident no liability bond or policy applied to it. (See Exhibit 1.)

20. The Missouri Department of Insurance has been authorized by the legislature to implement regulations applicable to automobile insurance policies. Section 374.045, R.S.Mo.

21. The Missouri Division of Insurance provides in 20 CSR 500–2.100(G) that uninsured motor vehicle coverage shall not "utilize any definition more limiting than uninsured motor vehicle as construed in Section 379.203, R.S.Mo."

Obviously, these facts do not establish the requisite proof elements of the respondents' claim that James negligently entrusted his vehicle to Schlosser, causing, at least in part, the accident in question. As such, the respondents did not make a *prima facie* case for summary judgment on their claim that they were entitled to the payment of uninsured motorist benefits under the Stotts policy for James' negligent entrustment of his vehicle to Schlosser such that the trial court erred in granting the respondents' motion for summary judgment.

## II.

■ Having resolved Point II, we now turn to Point I. In Point I, the appellant claims that the trial court erred in *overruling* its motion for summary judgment because on the uncontroverted material facts alleged in its motion it negated one of the

proof elements of the respondents' claims. Specifically, it claims that to the extent the respondents were relying on a theory of negligent entrustment to establish uninsured motorist coverage under the policy, it was entitled to judgment as a matter of law in that it was undisputed from the summary judgment record that the respondents could not show that James knew or should have known that Schlosser was an incompetent or careless driver.

■ Before reviewing the merits of the appellant's claim in this point, we must first determine our jurisdiction, *sua sponte. Bituminous Cas. Corp.,* 64 S.W.3d at 357. As a rule, the denial of a motion for summary judgment is not a final and appealable judgment subject to our review. *Leiser v. City of Wildwood,* 59 S.W.3d 597, 605 (Mo.App.2001). This rule applies even where the trial court, in denying one party's motion, grants the adverse party's motion on the same claim. *Id.*

Despite the lack of a final judgment, there have been instances where our appellate courts, without any discussion of the authority for doing so, have ostensibly reviewed the denial of a motion for summary judgment due to the existence of extraordinary circumstances. *See, e.g., In re Estate of Corbin,* 66 S.W.3d 84, 94 (Mo. App.2001); *Strain–Japan R–16 Sch. Dist. v. Landmark Sys., Inc.,* 51 S.W.3d 916, 919 (Mo.App.2001). Such circumstances have been found where in reviewing and reversing the grant of one party's motion on the merits, the appellate court necessarily concludes that on the summary judgment record made, the adverse party's motion should have been sustained. *Lopez v. Am. Family Mut. Ins. Co.,* 96 S.W.3d 891, 892 (Mo.App.2002). In such cases, to reverse and remand without ordering the trial court to enter summary judgment for the adverse party would seem illogical. De-

spite the logic of the situation, such a course of action still begs the question as to what authority the appellate court has for reviewing and ruling on the denial of the summary judgment motion in that it is not a final judgment subject to appellate review.

The answer to the question posed would appear to lie in the fact that in the "extraordinary circumstances" cases, it could be argued that the appellate court is not actually reviewing the denial of the motion for summary judgment when it declares that summary judgment should have been entered for a party in reversing the trial court's grant of summary judgment for the other party. The argument would be that, in declaring that summary judgment should have been granted to the party whose motion was denied by the trial court, the appellate court is doing so as part and parcel of its authorized review and ruling on the trial court's grant of summary judgment to the adverse party and in accordance with Rule 84.14, which authorizes the appellate court to declare the judgment that the trial court ought to have given.

As we determined in our resolution of Point II, *supra,* the trial court erred in granting summary judgment for the respondents on their claim based on a theory of negligent entrustment, the only theory on which coverage could be shown, because they failed to allege undisputed material facts establishing each and every proof element of their claim, specifically that there was uninsured motorist coverage for James' negligent entrustment of his vehicle to Schlosser. Thus, that issue would remain in dispute and would await resolution by the trier of fact, unless the appellant is correct in its assertion that from the summary judgment record before us we can determine that it is undisputed that the respondents could never show one

or more of its proof elements of its negligent entrustment theory. Based on the summary judgment record presented, we cannot find that to be true such that we fail to find the necessary extraordinary circumstances warranting our review of a denial of a motion for summary judgment.

Point dismissed.

## Conclusion

The judgment of the Circuit Court of Clay County, granting summary judgment to the respondents on their petition for breach of contract and vexatious refusal to pay, is reversed and the case is remanded to the court for further proceedings consistent with this opinion.

LOWENSTEIN, P.J., and SMART, J., concur.