**HEALTHSTYLE PRODUCTS INTERNATIONAL, INC.,**
**Appellant,**

v.

**UNION PLANTERS BANK,**
**Respondent,**

and

**A.G. Edwards & Sons, Inc., Defendant.**

**No. ED 86371.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 28, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 4, 2006.

Application for Transfer Denied
June 30, 2006.

Jonathan F. Andres, Clayton, MO, for appellant.

David G. Wasinger, Assistant Attorney General, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

Healthstyle Products International Inc. ("Products") appeals from the trial court's grant of a summary judgment in favor of Union Planters Bank N.A. ("the Bank") in an action for interpleader. We reverse and remand.

The Bank loaned $2,000,000.00 to Products in 1998. To secure its obligation, Products executed several agreements, including a promissory note and a loan agreement. In 2001, Healthstyle Furniture, LLC ("Furniture") was formed. In November 2002, the Bank loaned Furniture $249,730.84 through a line of credit. In December 2002, the Bank loaned Furniture $2,000,000. To secure these loans, Furniture executed two promissory notes in favor of Bank and two commercial security agreements.

In 2003, Furniture, through Tilford Hearsh, (Vice President of Products and Furniture), Mark Hearsh, (President of Products and Furniture), Linda Collier and Jeff Collier, (officers of both corporations), executed a second amendment ("the

Amendment") to the 1998 loan agreement. The Amendment provided, in pertinent part:

> The original loan agreement between Healthstyle Products International, Inc. ("Borrower") and Magna Bank, N.A. n/k/a Union Planters Bank, N.A. ("Lender") dated August 18, 1998 and amended January 27, 1999 is further amended as follows: All lending agreements, collateral documents, security agreements extend not only to Healthstyle Products International, Inc. but also to Healthstyle Furniture, L.L.C.

Furniture defaulted on the 2002 promissory notes and in August 2003, the Bank filed a ten-count Petition in St. Louis County against Furniture, the two Colliers and the two Hearshs seeking repayment of the Furniture notes ("Furniture Lawsuit"). In connection with the Furniture Lawsuit, the Bank obtained a writ of attachment commanding the sheriff to execute on: "the property of Healthstyle Furniture, LLC including but not limited to any and all accounts, cash or other assets located at A.G. Edwards." Following service of the writ on A.G. Edwards, A.G. Edwards froze a Products account valuing $197,048.73.

In November 2003, Products filed this suit ("the Products Lawsuit") for conversion against A.G. Edwards, alleging among other things, that Products was not a party to the earlier lawsuit against Furniture and that Products and Furniture were separate corporations. A.G. Edwards filed an answer, moved to join the Bank as a necessary party and counterclaimed for interpleader. In April 2004, the trial court issued an order and judgment joining the Bank as a party and directing A.G. Edwards to interplead the funds held pursuant to the writ of attachment. In response, A.G. Edwards deposited the interpleaded funds into the registry of the Circuit Court, and Products thereafter voluntarily dismissed A.G. Edwards.

In March 2004, Furniture, Mark Hearsh, Tilford Hearsh, Jeff Collier and Linda Collier, consented to judgment in favor of the Bank in the amount of $1,595,895.10 in the Furniture Lawsuit. The Bank sought to satisfy a portion of the judgment with the interpleaded funds held in Products' A.G. Edwards accounts which had been previously deposited in the Circuit Court registry.

In January 2005, the Bank filed a motion for summary judgment in the Products Lawsuit. The Bank alleged, among other things, that it was entitled to the interpleaded funds because Products and Furniture were "each liable to the bank pursuant to the terms of the Amendment to Loan Agreement."

In March 2005, Products filed a cross motion for summary judgment asserting, among other things that, the Statute of Frauds precluded Products from liability for Furniture's debts because Products never executed the Amendments to the loan agreement. In April 2005, the trial court granted the Bank's motion for summary judgment and ordered the circuit clerk to disburse the interpleaded funds to the Bank. In addition, the trial court denied Products cross motion for summary judgment. Products appeals the trial court's grant of the Bank's motion for summary judgment and seeks entry of summary judgment in its favor.

### Standard of Review

Our review of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. "[A] 'genu-

ine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

### Discussion

Products contends in its first point that the trial court erred in granting summary judgment in favor of the Bank because: (1) there are disputed material facts regarding whether Products and Furniture are jointly liable for Furniture's debt to the Bank and (2) the Bank's only affidavit offered in support of the judgment contains hearsay. The Bank, in arguing that the trial court's order was proper, primarily relies on its view that all of the principals of Furniture and Products (the Hearshs and the Colliers) signed the Amendment to the Loan Agreement extending the security agreements and loan agreements to Products and Furniture.

Both parties appear to agree that their dispute turns on whether the Amendment obligates Products on the loans between Furniture and the Bank, which were the subject of the Furniture Lawsuit. In support of its position, Products focuses on Section 432.010 RSMo. ("the Statute of Frauds"), which provides in pertinent part as follows:

> No action shall be brought ... to charge any person upon any special promise to answer for the debt, default, or miscarriage of another person, ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith or some other person by him thereto lawfully authorized[.]

Products asserts that because it did not sign the Amendment it cannot be bound by the Amendment, presumably, even if the Amendment does obligate Products for Furniture's obligations. The Bank does not specifically address Products' Statute of Frauds argument, except to the extent that it contends that "all of the principals of Products and Furniture signed [the Amendment]."

A review of the Amendment reveals that the document is signed by the Colliers and the Hearshs underneath the caption Healthstyle Furniture, LLC. Although the Colliers and the Hearshs are in fact the principals of Products, as well as Furniture, there is nothing on the document to indicate that the Colliers and Hearshs executed the document on behalf of Products as well as Furniture.

██ A promise to answer for the debts of another is within the purview of the Statute of Frauds. *National Refining Co. v. McDowell,* 201 S.W.2d 342, 346–347 (Mo.1947). Thus, contracts to answer for the debt of another must be in writing and signed by the party to be charged, that is, the party against whom enforcement is sought. *National Refining,* 201 S.W.2d at 347. Although the signature of the party to be charged is not required to be in any particular form, the contract *must* be signed by the party to be charged. *Dinuba Farmer's Union Packing Co. v. J.M. Anderson Grocer Co.,* 193 Mo.App. 236, 182 S.W. 1036 (1916). A contract covered by the Statute of Frauds that is unsigned by the party to be charged is unenforceable and "nothing short of [the party's] signature can make it into an enforceable contract." *Midwest Energy, Inc. v. Orion*

*Food Systems, Inc.,* 14 S.W.3d 154, 157 (Mo.App. E.D.2000).

■ For purposes of its summary judgment motion, the Bank conceded that Furniture and Products were separate entities. Thus, to enforce the Amendment against Products and hold Products liable for Furniture's default on the Bank's loans to Furniture (as well as its subsequent consent judgment), the Bank must look to a writing signed by Products. Beyond its assertion that the Amendment is such a writing, the Bank presented no evidence in support of its motion for summary judgment that Products signed the Amendment. Accordingly, the Statute of Frauds precludes reliance on the Amendment as the basis for obtaining the interplead Products funds to satisfy the Furniture debt.

The Bank's primary evidence in support of its view that the Amendment obligates Products on Furniture's debts is testimony from the deposition of Tilford Hearsh. At his deposition, Tilford Hearsh answered yes when asked whether based upon the "stipulation" Products and Furniture "would be jointly obligated as to the assets and liabilities." Unfortunately, neither Tilford Hearsh's testimony nor other similar deposition testimony from Jeff Collier supplies the missing Products signature. Accordingly, point one is granted.[1]

■ Products also argues for a reversal of the trial court's denial of its motion for summary judgment. Generally, denial of a motion for summary judgment is not a final and appealable judgment subject to review. *Stotts v. Progressive Classic Ins. Co.,* 118 S.W.3d 655, 668 (Mo.App. W.D. 2003). In cases of extraordinary circumstances, appellate courts have reviewed the denial of a motion for summary judgment

and entered summary judgment for the adverse party under the authority of Rule 84.14. *Id.* This is not such a case. Accordingly, we decline to enter summary judgment in favor of Products.

### Conclusion

The judgment of the trial court granting the Bank's motion for summary judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., concur.

---

1. Because the application of Section 432.010 to this case is dispositive, we do not reach the remaining subparts in support of the reversal of the grant of summary judgment.