Frank and Ruth BERRY,
et al., Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE CO.
Respondent.

No. WD 55206.

Missouri Court of Appeals,
Western District.

June 30, 1999.

Jonathan L. Laurans, Kansas City, for appellant.

M. Courtney Koger, Kansas City, for respondent.

Before Judge ALBERT A. RIEDERER, Presiding, Judge ROBERT G. ULRICH and Judge LAURA DENVIR STITH.

PER CURIAM.

James Berry, while riding his bicycle, was struck by an automobile and injured. The automobile was a Pizza Hut delivery vehicle owned by the father of the driver, Natalie Duell. James Berry's parents, Frank and Ruth Berry, eventually sued American Family under the uninsured motorist coverage of their auto policy, claiming that neither the driver nor Pizza Hut had coverage for the accident. The trial judge granted partial summary judgment to the Berrys on the issue of uninsured motorist coverage. The case was tried to a jury, which awarded the Berrys $12,000.00 in damages on their claim under the uninsured motorist coverage under their American Family policy, $1.00 on their claim against American Family for vexatious refusal to pay, and $10,000.00 in attorney's fees. The judge refused to allow

the Berrys to submit a first-party claim against American Family for "bad faith" in its refusal to pay them under their uninsured motorist coverage.

The Berrys appeal from the trial court's judgment ruling as a matter of law that they could not maintain an action for "bad faith." American Family cross-appeals from judgment in favor of the Berrys on the issue of coverage under the uninsured motorist provisions of its policy, claiming that the vehicle involved was not uninsured because it was covered by a policy Pizza Hut maintained with Kemper Insurance Company. Further, American Family appeals the trial court's denial of its motions for directed verdict and JNOV and/or new trial on the Berrys' claim for vexatious refusal and in allowing this claim to be submitted to the jury. Finally, the Berrys moved this court for additional attorney's fees on appeal under § 375.296 and § 375.420.[1]

Because we find that it is undisputed that Pizza Hut's insurer, Kemper National Insurance Companies ("Kemper"), paid the Berrys $6,000 in settlement of their liability claim under Pizza Hut's policy, and because under Missouri law an insured is not entitled to recover under the insured's uninsured motorist coverage where, as here, the insured has settled a liability claim asserting coverage under another insurer's policy for the same accident, we reverse and remand with directions to enter judgment in favor of American Family on all claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 1994, James Berry was involved in an automobile accident while riding his bicycle near his home in Kansas City, Missouri. James' bicycle was struck by an automobile driven by a Pizza Hut delivery driver named Natalie Duell. James sustained injuries from this accident, which resulted in approximately $17,-000 in damages.

Ms. Duell's automobile was owned by her father, Clarence Duell. Clarence Duell had previously purchased insurance for his automobile, but that insurance had lapsed before October 10, 1994. Neither Natalie Duell nor Clarence Duell had purchased any other valid or collectible automobile insurance. However, Ms. Duell was acting in the scope of her employment with Pizza Hut. Pizza Hut carried liability insurance through Kemper. Frank Berry had a valid automobile policy through American Family, which contained uninsured motorist coverage. The Berrys made claims against the Duells, Pizza Hut, and American Family.

Kemper and American Family communicated with each other about the claim. Kemper's claims officer sent American Family a number of letters in which she confirmed that, because Ms. Duell and her family had no insurance on their vehicle, Kemper's policy would provide coverage. However, Kemper also apparently did not offer to pay the Berrys the full amount of their claim, although Kemper's coverage was far in excess of the Berrys' claim. Instead, Kemper offered to mediate the Berrys' claims against the parties, and invited American Family to attend the mediation.

Rather than attend the mediation, on October 24, 1995, American Family denied the Berrys' uninsured motorist claim on the basis that the vehicle was covered by Pizza Hut's liability policy with Kemper. On October 31, 1995, the Berrys and Pizza Hut reached a settlement. Kemper paid the Berrys $6,000.00. In exchange, the Berrys released Kemper, Pizza Hut and Natalie Duell from any further responsibility. The release was written in very broad terms, releasing all claims against those released, whether known or unknown. It did, however, specifically provide that the Berrys retained the right to sue their own insurer, American Family, under their uninsured motorist coverage.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

The Berrys filed suit against American Family for recovery of uninsured motorist benefits, vexatious refusal to settle, and bad faith, and requested attorney's fees. American Family filed an answer and a motion for summary judgment, arguing that its uninsured motorist coverage does not apply because Ms. Duell's vehicle was insured by Kemper. The Berrys filed a cross-motion for summary judgment seeking a declaration stating that American Family's policy provided coverage for the accident under its uninsured motorist provisions.

On September 5, 1996, the trial court granted partial summary judgment in favor of the Berrys, declaring that the Berrys had insurance coverage under the uninsured motorist provision in their American Family policy. The trial court also granted American Family's summary judgment motion as to the Berrys' bad faith claim. The trial court left for trial the issues of damages, vexatious refusal and attorney's fees.

A trial was held, and on September 10, 1997, the jury returned a verdict awarding the Berrys $12,000.00 actual damages (to be reduced by James Berry's comparative fault of 10%); $1.00 in vexatious refusal penalties; and $10,000.00 in attorney's fees. On September 24, 1997, the court sustained American Family's post-trial motion for credit and reduced the actual damage portion of the judgment by $6,000.00 as an offset for the Berrys' settlement with Pizza Hut.

## II.  THE INSURED CANNOT SETTLE A LIABILITY CLAIM PREMISED ON COVERAGE BY THE TORT-FEASOR'S INSURER AND THEN RECOVER AGAINST THE UNINSURED MOTORIST CARRIER ON THE PREMISE THAT THERE WAS NO APPLICABLE LIABILITY INSURANCE

Because we find American Family's cross-appeal to be dispositive, we address it first.

American Family argues that the trial court erred in granting the Berrys a partial summary judgment on the issue whether American Family's policy had applicable insurance coverage under its uninsured motorist provisions for the accident, and erred in submitting this claim to the jury and in refusing to grant it judgment JNOV on the Berrys' claims. American Family maintains that Ms. Duell's vehicle was not uninsured, in that Pizza Hut provided liability insurance for its drivers, including Ms. Duell, under its policy with Kemper.

▆▆▆ Our standard of review of a summary judgment is essentially *de novo. Lawrence v. Bainbridge Apartments*, 957 S.W.2d 400, 403 (Mo.App.1997), *citing, ITT Commercial Fin. Corp., v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered and grant the non-moving party the benefit of all reasonable inferences from the record. *Id.* To be entitled to summary judgment a movant must demonstrate that there is no genuine dispute of material fact and that he or she is entitled to judgment as a matter of law. *Id.*

American Family and the Berrys stipulate that: (1) at the time Natalie Duell struck James Berry, she was driving an automobile owned by her father, Clarence Duell; (2) that the insurance policy Clarence Duell had purchased for the vehicle had lapsed; and (3) that neither Natalie Duell nor Clarence Duell had purchased any other valid or collectible insurance applicable to the accident. The point on which the parties differ is whether the Duell vehicle was in fact uninsured, due to the liability coverage provided for Pizza Hut by Kemper.

"The purpose of the uninsured motor vehicle statute, § 379.203.1, [ ] is to protect the person injured in the same manner as he would be if the offending vehicle had been covered by a standard liability poli-

cy." *Auto. Club Inter–Ins. Exch. v. Farmers Ins. Co.*, 646 S.W.2d 838, 840 (Mo.App. 1982). The statute was enacted to provide coverage to insureds who are injured by drivers of uninsured motor vehicles, not to provide liability insurance for the uninsured motorist. *Id.* "Since coverage is provided in the agreement between the insurer and the insured, the right of the injured party to recover from an uninsured motorist carrier is on the contract rather than in tort." *Id., citing, Cobb v. State Security Ins. Co.*, 576 S.W.2d 726, 736 (Mo. banc 1979).

■ The interpretation of an insurance policy is a question of law for the court. *Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri*, 965 S.W.2d 194, 196 (Mo.App.1998). Policy language which is unambiguous must be given its plain and ordinary meaning, and the court must construe it as written. *Id.; Perry State Bank v. Farmers Alliance Mut. Ins. Co.*, 953 S.W.2d 155, 157 (Mo.App.1997). Thus, we turn to the provisions of the American Family policy and the Kemper policy to determine whether, as a matter of law, Natalie Duell was driving an uninsured vehicle under the definition in American Family's policy.

American Family's policy states under "Part III – Uninsured Motorists Coverage" that:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured vehicle . . .
>
>  . . . .
>
> 3. Uninsured motor vehicle means a motor vehicle which is:
>
> a. Not insured by a bodily injury liability bond or policy at the time of an accident.

Both parties agree that the only liability insurance policy that could apply to the vehicle Natalie Duell was driving is the Kemper policy. Thus, we determine whether her vehicle was insured by the Kemper policy at the time of the accident. The Kemper policy states under Section II – Liability Coverage:

> 1. Who is an insured – The following are 'insureds':
>
> a. You for any covered 'auto'.

The policy also states that "[t]hroughout this policy the words 'you' and 'your' refer to the name insured." The named insured, of course, was Pizza Hut. An endorsement to Section II added the following to the provision:

> "Any employee of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs."

Natalie Duell was an employee of Pizza Hut using an automobile Pizza Hut did not own for Pizza Hut business. Accordingly, she was an insured under the Kemper policy, and we thus turn to whether the Kemper policy provided liability insurance coverage for the auto involved in the accident.

Whether the coverage provided by the Kemper liability policy for "any auto" is primary or secondary is determined by Section IV – Business Auto Conditions. Subsection B(5) to General Conditions, is entitled "Other Insurance." Subsection (a) of Kemper's "Other Insurance" provision states:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

As noted above, "you" refers to the named insured, Pizza Hut. Thus, the provision states that it will provide primary insurance for any covered auto owned by Pizza Hut, and that coverage for any covered auto not owned by Pizza Hut is "excess over any other collectible insurance." Kemper apparently interpreted this provision to mean that where, as here, the auto involved in the accident is not covered by any other liability policy, then there is no

"other collectible insurance" and the Kemper liability policy will provide primary coverage. This is, at any rate, the interpretation given it by the Kemper claims officer in two letters it initially sent American Family. It was based on receipt of these letters that American Family took the position that its uninsured motorist coverage did not apply, since Kemper had admitted its liability policy covered the accident.

Kemper's interpretation of its own policy apparently provided at least part of the basis for the settlement between Kemper and the Berrys. Under the settlement, the Berrys agreed to settle all of their claims, known or unknown, against Pizza Hut, Kemper or Natalie Duell, in exchange for $6,000, with the exception that they retained their right to pursue a claim against American Family under their uninsured motorist coverage with it. They proceeded to pursue that very claim in the instant suit.

As noted above, however, American Family's uninsured motorist coverage applies only when the tortfeasor was not insured by a bodily injury liability policy at the time of the accident. Missouri courts have held that this provision will be held to be complied with both where there is no dispute that the tortfeasor is uninsured, as well as when the liability insurer denies coverage, rightly or wrongly. As stated in *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132 (Mo.App.1984):

> When the liability insurer has expressly denied or disclaimed coverage, it is generally held that a claimant under such uninsured motor vehicle insurance need not prove the denial or disclaimer was valid [citations omitted]. One basis assigned for so holding is that if such denial or disclaimer is capricious, there has been no injury because the uninsured motor vehicle insurer is subrogated to the claim against the tortfeasor and liability insurer....

*Id.* at 135. *See also Omaha Indem. Co. v. Pall, Inc.*, 817 S.W.2d 491, 498–99 (Mo.

App.1991) ("we find no support for the assertion that only a legally valid denial of liability coverage will create an obligation upon the victim's insurance carrier").

*Rister* and similar cases also hold, however, that "an initial denial by a liability insurer does not create an unconditional obligation on the part of the uninsured motor vehicle insurer." *Id.* at 136. Thus, if the liability insurer later reconsiders and provides coverage, the insured, obviously, cannot recover against his or her uninsured motorist carrier just because coverage had initially been denied. *Rister* held that the same logic requires that, where the insurer at first denies coverage, but later settles a liability claim and pays a sum to the injured party, then the injured party is similarly precluded from later claiming against his or her uninsured motorist carrier, for that would be inconsistent with the fact that the injured party has in fact recovered from the tortfeasor's insurer based on a claim that the latter insurer did, in fact, provide liability coverage. As *Rister* explained:

> It is obvious the same result would follow when a liability insurer expressly and unconditionally withdraws an initial denial. When a liability insurer, after an initial denial of coverage, extends an offer in settlement, it may be said it has only conditionally withdrawn its denial. However, *when such an offer is accepted, the liability insurer no longer denies coverage. ...*

*Id.* at 136 (emphasis added).

*Rister* thus held that, where the insured had settled a disputed liability claim against the tortfeasor's insurer, the insured was not entitled to recover under his uninsured motorist coverage, for in fact he did recover on his claim against the liability insurer for the tortfeasor, as evidenced by the settlement. *Id.* While the court noted that this might discourage settlement with the tortfeasor's carrier if the insured also wanted to recover from the uninsured motorist carrier, it said this

concern "cannot be made the basis of imposing liability upon the uninsured motor vehicle insurer when, within the plain meaning of the insurance contract, none exists otherwise." *Id.*

*Sayers v. Laramie,* 809 S.W.2d 147 (Mo. App.1991), reaffirms *Rister's* · approach. It notes that *Rister:*

> [I]mplicitly depended upon a finding that plaintiff was not entitled to accept a settlement from the driver's liability carrier because the driver was insured and thereafter, continue to claim and bear the burden to prove the driver was an uninsured motorist.... These rights are mutually exclusive because an element of the cause of action against the uninsured motor vehicle insurance carrier could not be proven except by proof of a fact which plaintiff acknowledged was untrue when plaintiff settled....

*Sayers,* 809 S.W.2d at 148. *See also Schreiner v. Omaha Indem. Co.,* 854 S.W.2d 542, 544 (Mo.App.1993) (distinguishing *Rister* because in *Schreiner* there had been no settlement or admission of coverage by liability insurer before claim made against uninsured motorist carrier).

These cases are directly applicable here. The Berrys settled their liability claim alleging coverage under Pizza Hut's policy with Kemper, and received $6,000. This explicitly settled *all* claims against Pizza Hut, including claims involving the negligence of Ms. Duell and Pizza Hut's own negligence in hiring her. This settlement prevents them from proving an essential element of their claim against American Family, i.e., that Pizza Hut was uninsured, for they cannot prove that Pizza Hut was uninsured when they have in fact recovered from Kemper based on the contrary premise. They therefore were not entitled to recover against American Family on the uninsured motorist provision of their policy.

Because of our resolution of this issue, we need not reach the other issues raised by the parties. We agree with American Family that the Berrys were not unin-

sured as that term is used in the uninsured motorist provision of its policy, and reverse and remand with directions to enter judgment in favor of American Family on all claims.

All concur.