**Elizabeth McMAINS, Plaintiff–Appellant,**

v.

**Norma McMAINS, Defendant,**

**Allstate Insurance Company, Defendant–Respondent.**

No. 26999.

Missouri Court of Appeals, Southern District, Division One.

April 19, 2006.

John O. Newman, Springfield, for Appellant.

Randy P. Scheer, S. Jacob Sappington, Springfield, for Respondent Allstate Insurance Company.

NANCY STEFFEN RAHMEYER, Presiding Judge.

On September 22, 1992, Mike and Mary Stevens purchased a 1978 Ford F150 pickup truck ("F150 pickup") and obtained liability insurance through State Farm Mutual Automobile Insurance Company ("State Farm"). In August of 1993, the Stevens' son, Michael, purchased a 1981 Mercury Lynx ("Lynx") and the Stevens called their State Farm agent to purchase insurance for the Lynx. According to State Farm and Mary Stevens, the agent erred and substituted the Lynx for the F150 pickup rather than issuing a separate insurance policy for the Lynx. According to Elizabeth McMains ("Appellant"), there was no insurance on the F150 pickup because of the failure by the Stevens to pay the insurance premium.

Thereafter, in September 1993, the F150 pickup driven by the Stevens' son, Matthew, was involved in an automobile accident with a vehicle driven by Norma McMains, Appellant's mother, who was insured by Allstate Insurance Company ("Respondent"). State Farm initially denied coverage for the accident and provided an affidavit by a claims supervisor, which stated that she was unable to locate any policy of insurance which was in effect on September 9, 1993, and in which Matthew Stevens was the named insured. She further stated that she had searched the records and documentation of State Farm regarding policies of automobile insurance for insurance policies in which the "described vehicle" included a F150 pickup with the same identification number and was unable to locate any. Matthew Stevens failed to file an accident report with the Missouri Department of Revenue. Despite the initial denial, State Farm subsequently filed an action in interpleader and paid the policy limits into the court.

The uninsured motorist insurance coverage in the Allstate policy provided:

We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

. . . .

An uninsured auto is

1. a motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident.

. . . .

3. a motor vehicle for which the insurer denies coverage, or the insurer becomes insolvent.

After the interpleader had been filed by State Farm, Appellant filed suit against Respondent, claiming that the F150 pickup was an uninsured vehicle as defined under the "uninsured motorist" provision. The trial court granted partial summary judgment to Respondent but did not state the basis of the judgment. Appellant brings one point on appeal, positing that summary judgment in favor of Respondent was not appropriate because the F150 pickup was an uninsured motor vehicle as defined in Respondent's policy in that it was not covered by a bodily injury liability bond or insurance policy at the time of the accident. The issue, as framed by Appellant, is an issue of law because there is no dispute that the vehicle was not covered by a bodily injury liability bond or actual insurance policy *on the date of the accident.*[1] Appellant contends the vehicle was not covered by a bodily injury liability bond or insurance policy, regardless of whether it was uninsured by a mistake of State Farm employees or because the owners failed to make the premium payments.

As Appellant claims there is no dispute of material facts, only the disputed legal conclusion of whether the vehicle was covered by a bodily injury liability bond or insurance policy at the time of the accident, we shall analyze whether the summary judgment was appropriate on this basis. Appellant bases its legal argument upon the definition of an uninsured auto as "a motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident." Appellant notes that section 379.203.2[2] focuses on the motor vehicle and not whether the owner or operator of the vehicle is an insured or uninsured motorist. *Harrison v. MFA Mutual Insurance, Co.,* 607 S.W.2d 137, 143 (Mo. banc 1980). Citing to *Harrison,* Appellant contends that the term "uninsured motor vehicle," as used by the legislature, "refers to a vehicle whose operator or owner did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident." *Id.* at 144. Appellant concludes that under the clear, unambiguous language of the Allstate policy, the F150 pickup was an uninsured vehicle as defined by the language of its own policy of insurance.

Respondent counters that the F150 pickup was an insured motor vehicle. It bases that claim on affidavits of State Farm employees; the affidavits claim that State Farm, after initially denying the Stevens' claim, reached a conclusion that the vehicle

1. We note that there is a factual dispute whether the F150 pickup was uninsured because of the nonpayment of the premium or because of an error of State Farm's employees; however, Appellant has attached no legal significance to a determination of these facts in his point relied on.

2. All references to statutes are to RSMo 2000, unless otherwise specified.

was insured because the actions of the insurance agent in substituting the Lynx for the F150 pickup were contrary to State Farm policy. Respondent further claims that the payment by interpleader action on the policy provides evidence the F150 pickup was an insured vehicle under Respondent's insurance policy at the time of the accident. Respondent also posits that this is an issue of law and not of facts; its argument is framed as a legal interpretation of Respondent's policy. Specifically, Respondent argues that it does not matter why on the date of the accident there was no actual policy in place of the F150 pickup, the fact of the matter is that the vehicle was insured on a policy by State Farm when it paid on the liability policy.

Respondent claims that *Berry v. American Family Mut. Ins. Co.*, 995 S.W.2d 16 (Mo.App. W.D.1999), is controlling. We agree. Citing to *Rister v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 132, 135 (Mo.App. S.D.1984), the *Berry* court held that if the insured settles a disputed liability claim against the tortfeasor's insurer, the insured was not entitled to recover later under the uninsured motorist coverage. *Id.* at 20. Although some of the language of *Rister* has been criticized or distinguished,[3] the holding of *Rister* that an insured may not pursue a claim against his insurer for an uninsured motorist claim *after* he has recovered on a claim against the liability insurer for the tortfeasor has

remained intact. We find that summary judgment was properly granted to Respondent. The judgment is affirmed.

PARRISH, J., and LYNCH, J., concur.

---

**3.** *See Schreiner v. Omaha Indem. Co.*, 854 S.W.2d 542, 545 (Mo.App. E.D.1993) (finding that an insured motorist may seek declaratory judgment against its own insurer for uninsured motorist benefits when the liability insurer denies coverage even if the liability insurer subsequently accepts coverage after a judicial determination of coverage on the uninsured motorist policy); *Kramer v. Insurance Co. of North America*, 54 S.W.3d 613, 622 (Mo.App. W.D.2001) (distinguishing the holding of *Rister* from the principle of contract construction used to arrive at the hold-

ing); *Pink v. Knoche*, 103 S.W.3d 221, 227 (Mo.App. W.D.2003) (finding whether the liability carrier had denied liability, making the insured eligible for a claim under the uninsured motorist coverage, was a question of fact for the jury); *Skandia America Reinsurance Corp. v. Financial Guardian Group*, 857 S.W.2d 843 (Mo.App. W.D.1993) (finding the language in *Rister* concerning an election of remedies as gratuitous, tentative, and based upon the language of the particular uninsured motor vehicle policy).