In the
 Missouri Court of Appeals
 Western District

 
 ROBERT MORRIS, 
 
 Appellant,  WD83788
 v. 
  OPINION FILED:
 GEICO CASUALTY COMPANY, ET AL., 
  MARCH 9, 2021
 Respondents. 
 
 

 Appeal from the Circuit Court of Clay County, Missouri
 The Honorable David Chamberlain, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge,
 Anthony Rex Gabbert, Judge

 Robert Morris appeals the circuit court’s grant of summary judgment in favor of GEICO

Casualty Company (“GEICO”) on Morris’s Second Amended Petition for Damages against

Bradley Christopher and GEICO. Morris contends that the circuit court erred in granting summary

judgment to GEICO on Morris’s claim for vexatious refusal to pay, 1) when it found that the Ford

Taurus that hit Morris’s vehicle was neither an “uninsured motor vehicle” nor a “hit-and-run

vehicle” as defined by the GEICO Policy, and 2) when it found that Morris’s claims were barred

by the doctrine of election of remedies. We affirm.
 Factual and Procedural Background

 The factual issues underlying this appeal appear undisputed. On November 22, 2014,

Morris was stopped in traffic when his 1997 GMC Sierra was rear-ended by a 1998 Ford Taurus

with license plate number PM8C9E. The accident occurred at or near the intersection of Missouri

Highway 291 and Ruth Ewing Road in Liberty, Clay County, Missouri. Colton Massie was an

eyewitness to the collision and followed the Ford Taurus, obtaining a vehicle license number which

he provided to police. At the time of the rear-end collision, Missouri license plate number

PM8C9E was registered to a 1998 Ford Taurus owned by Michael Christopher. Michael

Christopher and Bradley Christopher, father and son respectively, were listed as named insureds

on a policy of liability insurance issued by State Farm Insurance Company (“State Farm”) on the

Ford Taurus. The State Farm Policy provided liability coverage for damages for which Michael

and/or Bradley Christopher were deemed legally liable because of bodily injury to others caused

by an accident involving the 1998 Ford Taurus, subject to the terms and conditions of the State

Farm Policy.

 At the time of the collision, Morris was a named insured on a Missouri Family Automobile

Insurance Policy issued by GEICO. The GEICO Policy provided coverage for Morris’s 1997

GMC Sierra. The Policy provided Uninsured Motorist Coverage with limits of $100,000 per

person and $300,000 per accident. The Policy provided that GEICO would pay damages under

the Uninsured Motorists Coverage “for bodily injury caused by accident which the insured is

legally entitled to recovery from the owner or operator of an uninsured motor vehicle or hit-and-

run vehicle arising out of the ownership maintenance or use of that auto.” On June 14, 2016, a

year and a half after the accident, Morris sent a demand to GEICO for his uninsured motorist

 2
coverage policy limit of $100,000. On June 17, 2016, GEICO rejected Morris’s demand for the

reason that the accident was being covered by State Farm.1

 On October 4, 2016, Morris filed a Petition for Damages against both Michael Christopher

and Bradley Christopher as a result of the rear-end collision of November 22, 2014. In the Petition,

Morris alleged in alternative counts that Michael Christopher and Bradley Christopher were the

operators of the Ford Taurus that collided with Morris’s vehicle. With regard to Bradley

Christopher specifically, the petition alleged that on November 22, 2014, he was “operating his

father’s teal 1998 Ford Taurus” and “failed to operate the motor vehicle he was driving with the

highest degree of care” and “as a direct and proximate result of the collision” caused Morris to

sustain damages.

 On January 6, 2017, depositions were taken of Michael Christopher and Bradley

Christopher. Michael Christopher testified that he was the title owner of a Ford Taurus with license

plate number PM8C9E, and that he bought the Ford Taurus for his son, Bradley Christopher, in

August 2014. He testified that Bradley was the individual who used the Ford Taurus, and had the

set of keys for the Ford Taurus, from the time Michael Christopher bought the car in August of

2014 and up and until 2015. Bradley Christopher testified that he was the individual who used

and possessed the Ford Taurus on November 22, 2014. He denied, however, that the Ford Taurus

 1
 The summary judgment record reflects that GEICO’s stated reason for denying uninsured motorist coverage
to Morris was because State Farm, the insurance company which insured Michael Christopher’s vehicle, had agreed
to provide liability coverage for the accident. It is undisputed that the Ford Taurus was insured by State Farm with
liability limits in compliance with Missouri’s Financial Responsibility Law. Question #6 in Morris’s Statement of
Additional Material Facts in Opposition to GEICO’s Motion for Summary Judgment states: “Three days later, on June
17, 2016, Geico Casualty Company rejected Plaintiff’s demand by way of letter because State Farm Insurance
Company had stated they had coverage for the accident.” In Response, GEICO admitted that it sent a letter to
Plaintiff’s counsel wherein it rejected Morris’s demand, stated that the letter spoke for itself, and further stated that,
“Defendant admits that prior to rejecting the demand, it confirmed that the Ford Taurus which collided with the
Plaintiff’s vehicle was insured by State Farm, and that State Farm had agreed to afford the liability coverage for the
subject accident.”

 3
was involved in a collision on that date, and denied that he was the operator of a vehicle that

collided with Morris.

 On January 30, 2017, Morris filed a First Amended Petition for Damages. The amended

petition removed Michael Christopher as a defendant, retained Bradley Christopher as a defendant

in Count I, and added GEICO as a defendant. The negligence allegations against Bradley

Christopher were substantially similar to those made in the initial petition. The allegations against

GEICO in Count II titled “Uninsured Motorist Coverage” contended that, “an unknown person

was operating the hit-and-run automobile … when the hit-and-run automobile negligently collided

with the rear of Plaintiff’s stopped vehicle, causing Plaintiff to sustain serious injuries.” It further

alleged that, “the unknown operator failed to operate the motor vehicle he was driving with the

highest degree of care as required by law ….” Count II additionally alleged that, “there was no

policy of bodily injury liability insurance applicable to the unknown operator’s automobile.

Further, that the “hit-and-run automobile left the scene of the accident, and the identity of the

operator is unknown.” Also, that Morris was covered by a policy of liability insurance, issued by

GEICO, that contained uninsured motor vehicle coverage applicable to Morris in the amounts of

$100,000 per person and $300,000 per accident. Count II requested a judgment against GEICO

for the damages Morris sustained in the accident, along with prejudgment interest as appropriate,

and costs.

 On November 8, 2017, Colton Massie, the eyewitness to the accident who gave the Ford

Taurus’s license number to the police, testified in a deposition regarding his observations of the

accident. During his testimony, he was shown a photograph of Bradley Christopher by Morris’s

counsel. Massie identified Bradley Christopher as the operator of the Ford Taurus at the time it

rear-ended the GMC Sierra on November 22, 2014.

 4
 On March 8, 2019, Morris filed a Second Amended Petition for Damages against Bradley

Christopher and GEICO. The Second Amended Petition was similar to the First Amended Petition,

with additional allegations in Count II that GEICO’s denial of uninsured motorist coverage was

against the terms and provisions of Morris’s insurance policy, that GEICO’s refusal to pay Morris’s

loss was without reasonable care or excuse, and that GEICO’s denial of payment was vexatious.

 On April 29, 2019, Morris received a policy limit settlement offer of $100,000 from State

Farm on behalf of Bradley Christopher, Michael Christopher, and all other insureds pursuant to

State Farm Policy No. 274-1146-F03-25B. On May 1, 2019, Morris sent a letter to GEICO

informing GEICO of State Farm’s settlement offer, and advised GEICO that Morris would not

agree to any settlement releasing his claims without first providing GEICO the opportunity to pay

the $100,000 in uninsured motorist coverage to Morris, with GEICO then having the right to

pursue claims against Michael or Bradley Christopher “or others arising out of the accident

pursuant to Defendant’s policy provisions.”

 On May 10, 2019, GEICO sent Morris a letter advising that GEICO had no objection to

Morris accepting the policy limit offer from State Farm, and had no objection to Morris releasing

his claims against Bradley Christopher, Michael Christopher, and all other insureds. GEICO

advised, however, that it was rejecting Morris’s demand for the $100,000 uninsured motorist

coverage policy limit.

 On June 10, 2019, Morris reached a settlement agreement on his claims asserted against

Bradley Christopher. In exchange for $100,000, Morris agreed to release all claims against

Bradley Christopher and Michael Christopher for any damages “which have resulted or may in the

future develop from an alleged accident occurring on or about November 22, 2014 at or near the

intersection of Missouri Highway 291 and Ruth Ewing Road, Liberty, Clay County, Missouri.”

 5
Morris executed a Release memorializing the terms and conditions of the settlement agreement.

The settlement amount of $100,000 was paid to Morris by State Farm on behalf of its insureds,

Bradley Christopher and Michael Christopher. After receiving payment of the settlement amount

from State Farm, Morris dismissed his claims against Bradley Christopher with prejudice.

 On October 2, 2019, Morris filed a Motion for Partial Summary Judgment with supporting

documents seeking “a determination as to whether Defendant Geico Casualty Company should

have provided uninsured motorist coverage to Plaintiff at the time of Plaintiff’s demand” and

asking the court to proceed to trial on the amount due Morris under the uninsured motorist coverage

and his claims of vexatious refusal to pay. GEICO filed a response opposing Morris’s motion and

arguing that Morris was not entitled to partial summary judgment because the undisputed material

facts showed that the accident was not caused by an “uninsured motor vehicle” or a “hit-and-run

vehicle” as defined in the GEICO Policy.

 On December 6, 2019, GEICO filed its own Motion for Summary Judgment on Morris’s

claims for Uninsured Motorist Coverage and Vexatious Refusal to Pay. GEICO also filed a

Memorandum in Support and a Statement of Uncontroverted Material Facts with supporting

exhibits. Morris filed a Response in Opposition to GEICO’s Motion for Summary Judgment and

additional supporting materials on January 3, 2020. GEICO filed a Reply Brief and a Response to

Plaintiff’s Statement of Additional Material Facts on January 20, 2020. The circuit court heard

argument on May 11, 2020. On May 13, 2020, the court entered an Order and Judgment denying

Morris’s Motion for Partial Summary Judgment and granting GEICO’s Motion for Summary

Judgment. The court held:

 The Court finds that the Ford Taurus which caused the subject motor vehicle
 accident was neither an ‘uninsured motor vehicle’ nor a ‘hit-and-run vehicle’ as
 such is defined by the GEICO policy, such that Plaintiff’s claim for uninsured

 6
 motorist coverage fails as a matter of law. The Court further finds that Plaintiff’s
 claims are barred by the doctrine of election of remedies.

This appeal follows.

 Standard of Review

 The standard of review for an appeal challenging the grant of a motion for summary

judgment is de novo. State ex rel. Heart of America Council v. McKenzie, 484 S.W.3d 320, 324

(Mo. banc 2016). Accordingly, we do not defer to the trial court's decision, but instead use the

same criteria that the trial court should have employed in initially deciding whether to grant

GEICO’s motion. Barekman v. City of Republic, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal

citations omitted). We review the record in the light most favorable to the party against whom

judgment was entered and accord that party the benefit of all inferences which may reasonably be

drawn from the record. Id. Summary judgment is appropriate where the moving party has

demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as

a matter of law. Goerlitz v. City of Maryville, 333 S.W.3d 450, 452-53 (Mo. banc 2011). Facts set

forth by affidavit or otherwise in support of a party’s motion are taken as true unless contradicted

by the non-moving party’s response to the summary judgment motion. Id.

 A ‘defending party’ may establish a right to summary judgment by showing: (1)
 facts negating any one of the claimant’s elements; (2) that the party opposing the
 motion has presented insufficient evidence to allow the finding of the existence of
 any one of the claimant’s elements; or (3) that there is no genuine dispute as to the
 existence of each of the facts necessary to support a properly pleaded affirmative
 defense.

Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc., 155 S.W.3d 50, 58-59 (Mo. banc 2005).

 “The interpretation of an insurance contract is a question of law and is given de novo

review.” Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., 531 S.W.3d 508, 511 (Mo. banc

2017). “In construing the terms of an insurance policy, this Court applies the meaning which

 7
would be attached by an ordinary person of average understanding if purchasing insurance.”

Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 (Mo. banc 2018) (internal quotation marks

and citation omitted). “Absent an ambiguity, an insurance policy must be enforced according to

its terms.” Id.

 Point I – “Hit-and-Run Vehicle” and “Uninsured Motor Vehicle”

 In Morris’s first point on appeal, he contends the circuit court erred in granting summary

judgment in favor of GEICO on Morris’s claim for vexatious refusal to pay after finding that the

Ford Taurus was neither an “uninsured motor vehicle” nor a “hit-and-run vehicle” as defined by

the GEICO Policy. Morris argues that the undisputed material facts establish that the Ford Taurus

qualified as a “hit-and-run vehicle” under the GEICO Policy at the time Morris made the claim for

uninsured motorist coverage. He contends that, although he eventually accepted a settlement offer

from Bradley and Michael Christopher’s insurer, the identity of the operator of the vehicle that

collided with Morris had not been identified at the time Morris demanded payment from GEICO

under Morris’s uninsured motorist coverage; consequently, “at the time of the demand for

coverage, the vehicle that collided with Plaintiff Morris qualified as a ‘hit-and-run vehicle’ and

Plaintiff has a valid claim for vexatious refusal to pay.”

 The Uninsured Motorist Coverage provisions of the GEICO Policy provide, in relevant

part (all emphases original):

 SECTION IV
 UNINSURED MOTORISTS COVERAGE

 ***
 DEFINITIONS

 The definitions of terms for Section I apply to Section IV, except for the following
 special definitions:

 8
 1. Hit-and-run vehicle means: a motor vehicle causing bodily injury to an
 insured with or without physical contact with him or with a vehicle he is
 occupying at the time of the accident and whose operator or owner cannot
 be identified;
 ***
 6. Uninsured motor vehicle is a vehicle, including a trailer of any type, which
 has no bodily injury liability bond or insurance policy applicable with
 liability limits complying with the Financial Responsibility Law of the state
 in which the insured auto is principally garaged at the time of the accident,
 or a hit-and-run vehicle. This term also includes a vehicle for which there
 is a bodily injury liability insurance policy applicable at the time of the
 accident but the Company writing the policy is or becomes insolvent or
 denies coverage.
 ***
 LOSSES WE PAY

 Under the Uninsured Motorists Coverage we will pay damages for bodily
 injury caused by accident which the insured is legally entitled to recovery
 from the owner or operator of an uninsured motor vehicle or hit-and-run
 vehicle arising out of the ownership maintenance or use of that auto.

 ***

 GEICO proposes that the Policy’s definition of a “hit-and-run vehicle” requires that either

the operator of a motor vehicle causing bodily injury to an insured cannot be identified, or the

owner of a motor vehicle causing bodily injury to an insured cannot be identified; i.e., the vehicle

is not a “hit-and-run vehicle” if the owner or operator can be identified. Morris proposes that the

language must be interpreted to mean that a “hit-and-run” vehicle encompasses situations where

an owner has been identified, but an operator has not, and vice versa. He contends that Section

379.203, RSMo 2016, which mandates uninsured motor vehicle coverage in Missouri, requires

this interpretation.

 We find that we need not definitively interpret this language because, even if we were to

accept Morris’s explication, it does not assist him on the facts of this case. As discussed in more

detail below, at the time of Morris’s demand for uninsured motorist coverage, Morris was alleging

 9
operator negligence and proceeding against the vehicle owner and his insureds, Michael and

Bradley Christopher, as if they were the negligent operators. The Christophers’ insurance company

agreed to provide coverage for the alleged operator negligence. Because the State Farm Policy

only provided liability coverage for damages for which Michael Christopher and/or Bradley

Christopher were deemed legally liable, and Morris was alleging operator liability, it would have

been reasonable to assume that an operator had been, or certainly could be, identified.2

Consequently, even under Morris’s explanation of the contract language, the Ford Taurus was not

a “hit-and-run vehicle” under the terms of the GEICO Policy at the time Morris demanded

uninsured motorist payment from GEICO. Further, because the Ford Taurus that collided with

Morris was insured, and the company providing that liability insurance was not denying coverage

for the accident, the Ford Taurus was also not an “Uninsured motor vehicle” under the language

of the GEICO Policy at the time of the demand.

 Morris contends that Stotts v. Progressive Classic Ins. Co., 118 S.W.3d 655 (Mo. App.

2003), interpreted Section 379.203 to require insurance providers to pay uninsured motorist

benefits if either the offending vehicle’s owner or the offending vehicle’s operator has no insurance

coverage. Morris argues that Stotts held that the issue of whether a vehicle is considered uninsured

turns on the underlying tort liability alleged and whether there is coverage for that particular tort.

Stotts, 118 S.W.3d at 664-65. Morris reasons that, even though the owner of the vehicle that hit

him had liability coverage for the accident through State Farm, Morris was entitled to uninsured

 2
 Morris acknowledges that to support a claim for vexatious refusal to pay, the insured must show that the
insurer’s refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable
and prudent person at the time the insurer was called upon to pay. Boatmen’s First Nat. Bank of Kansas City, 861
S.W.2d 600, 603 (Mo. App. 1993).

 10
motorist coverage from GEICO because the operator of the vehicle had not been conclusively

identified at the time of the demand, and Morris’s claims involved the tortious actions of the

operator, not the owner. We find that Stotts does not assist Morris.

 In Stotts, this court reversed a circuit court’s grant of summary judgment to plaintiffs Linda

Stotts and Rhonda Knouse on their petition against Progressive Classic Insurance Company

(“Progressive”) which alleged breach of contract and vexatious refusal to pay uninsured motorist

benefits. Id. at 658. On the facts of that case, Linda Stotts was operating her vehicle when it was

struck by a vehicle owned by Matthew James; James carried no insurance on the vehicle. Id. at

658-659. The operator of the uninsured vehicle, Christopher Schlosser, carried a liability policy

covering his negligent operation of the vehicle. Id. at 659. Stott’s mother was a passenger in

Stotts’s car at the time of the accident, and the mother died as a result of injuries sustained. Id.

Schlosser was sued for negligent operation of James’s vehicle, and Schlosser’s insurance carrier

settled the suit. Id. Because the offending vehicle was owned by James and had no liability

coverage, Stotts and her sister, Rhonda Knouse, filed a claim with Stotts’s insurance company for

uninsured motorist benefits. Id. This claim was denied. Id. The daughters then sued Progressive

for breach of contract and vexatious refusal to pay, and the circuit court entered summary judgment

in the Stotts’s and Knouse’s favor. Id.

 Progressive appealed the circuit court’s ruling to this court, arguing that the daughters

failed to make a prima facie case for summary judgment because they had not alleged

uncontroverted facts demonstrating that the motor vehicle was an “uninsured motor vehicle” under

the Progressive Policy and Section 379.203. Id. at 661. Progressive contended that, under the

policy language, the uninsured vehicle was not an “uninsured motor vehicle” because it was

undisputed that the operator had an operator’s liability policy that provided coverage for his

 11
operation of the vehicle at the time of the accident. Id.3 We agreed with Progressive that, under

the unambiguous terms of Stotts’s policy, if any liability policy provided coverage for that vehicle

at the time of the accident, it was not uninsured for purposes of the uninsured motorist coverage

provision. Id. at 663. Consequently, because it was undisputed that the operator of the uninsured

vehicle had a liability policy that covered his negligent operation of the vehicle at the time of the

accident, the vehicle was not an “uninsured motor vehicle.” Id. The policy language, however,

did not end the issue.

 The daughters argued that, despite there being no uninsured motorist coverage under the

express terms of the policy, Section 379.203 mandates coverage as a matter of public policy under

two scenarios:

 (1) where either the operator or owner of the vehicle does not carry a liability policy
 on the subject vehicle, regardless of whose negligence caused the accident; or (2)
 where, regardless of the fact that the operator carries a liability policy on the subject
 vehicle, the owner does not, and it can be shown that the owner negligently
 entrusted the vehicle to the driver.

Id. Upon review of Section 379.203, we disagreed that the statute mandates coverage under the

first scenario proposed by the daughters, but agreed that coverage is required under the second.4

 3
 Whether the vehicle was a “hit-and-run vehicle” under Progressive’s Policy was not an issue in that case.
“Uninsured motor vehicle” was defined in the Progressive Policy in a manner substantially similar to how the term
is defined in the GEICO Policy in this case.
 4
 Section 379.203 states, in relevant part (emphasis added):

 1. No automobile liability insurance covering liability arising out of the ownership,
 maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with
 respect to any motor vehicle registered or principally garaged in this state unless coverage is
 provided therein or supplemental thereto, or in the case of any commercial motor vehicle, as defined
 in section 301.010, RSMo, any employer having a fleet of five or more passenger vehicles, such
 coverage is offered therein or supplemental thereto, in not less than the limits for bodily injury or
 death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are
 legally entitled to recover damages from owners or operators of uninsured motor vehicles
 because of bodily injury, sickness or disease, including death, resulting therefrom.

 12
Id. at 664-65. We interpreted Section 379.203 “as mandating uninsured motorist coverage if: (1)

the insured is legally entitled to recover damages in tort from the owner or operator of the vehicle

for causing bodily injury, sickness or disease, including death; and (2) the vehicle, at the time of

the accident, was uninsured by a liability policy of insurance.” Id. at 664 (emphasis added).5 We

made clear that the issue of whether a vehicle is uninsured for purposes of Section 379.203 “does

not turn solely on whether there was an owner’s or operator’s policy in effect at the time of the

accident. Rather it turns on the underlying tort liability alleged and whether there is coverage for

that particular tort.” Id. at 664-65. Consequently, because the underlying tort alleged by the

daughters when demanding uninsured motorist coverage in Stotts was negligent entrustment of the

vehicle by the owner, the question then became whether there was an insurance policy covering

the owner’s negligent entrustment. Id. at 665. We concluded that, “although an operator’s policy

was in effect at the time of the accident covering the operator’s negligence in operating the subject

vehicle, there was not an owner’s policy covering the owner’s negligent entrustment of the vehicle

to the operator, which was alleged to have caused or contributed to cause the damages sought.”

Id. We stated that, “if the tortfeasor is an operator, then the vehicle is uninsured if there is not a

liability policy covering the tortfeasor’s negligent operation of the vehicle; or if the tortfeasor is

an owner, the vehicle is uninsured if there is not a liability policy covering the owner’s negligent

acts in causing the accident.” Id. at 666-667. Consequently, the daughters were entitled to

uninsured motorist coverage benefits.

 5
 Significantly, we discussed that the “owner or operator” language in the statute referenced the “tort proof
element,” not the “contract proof element,” which meant that “the mere fact that either the ‘owner or operator’ of the
subject vehicle did not have a policy of insurance covering the vehicle at the time of the accident is not dispositive of
the issue whether the vehicle is considered uninsured for purposes of § 379.203.” Id. at 664 (emphasis original). Stotts
exemplified that interpretation of Section 379.203 and the legislative meaning and intent therein required analysis
separate from interpretation of the insurance contract, and the two cannot be conflated.

 13
 Upon examination of the summary judgment record and the uncontroverted material facts

in this case, we find that Stotts is distinguishable. Unlike in Stotts where separate claims for

negligence were brought against the operator and owner, there is nothing in the summary judgment

record here to suggest that Morris ever made any claims of owner liability separate from operator

liability. Morris’s claims were always operator negligence; it was, therefore, operator negligence

that State Farm had already agreed to cover when Morris demanded uninsured motorist coverage

from GEICO.

 Morris contended in his Plaintiff’s Statement of Uncontroverted Facts, Fact #16, that he

performed all conditions to qualify under the GEICO Policy’s definition of a hit-and-run vehicle

by reporting the accident and giving a recorded statement on November 24, 2014, which set forth

“his claim that he has a cause of action for damages against an unidentified person.” At the time

of Morris’s recorded statement, made two days after the accident, neither the owner nor the

operator of the Ford Taurus had been positively identified, although a license plate number to the

Ford Taurus had been provided to police by an eyewitness. Yet, more than a year and a half elapsed

between the recorded statement and Morris’s demand for uninsured motorist coverage payment,

during which time the owner of the vehicle was identified and the owner’s insurance company

agreed to insure the accident. According to the record, this information was acquired, at least in

part, through GEICO’s investigation into the matter.6

 6
 Morris agrees that an insurer receiving a demand for uninsured motorist coverage is allowed a reasonable
amount of time to investigate the claim. A vexatious refusal to pay claim can be predicated on an insurer’s
unreasonable delay in investigating, or refusal to investigate, a claim. See D.R. Sherry Const., Ltd. V. American Family
Mut. Ins. Co., 316 S.W.3d 899, 907 (Mo. banc 2010). No such contention was made in this case, and the record
reflects that GEICO investigated the matter before refusing Morris’s demand for payment.

 14
 Plaintiff’s Exhibit D7, referenced in support of Morris’s Fact #16, shows numerous

interactions, as recorded by GEICO, that purportedly occurred between Morris and GEICO prior

to Morris ever making his demand. In one conversation, Morris advises that he would prefer not

to make any claims against his own insurance company if the offending party is determined to

have insurance. Exhibit D shows GEICO following up on leads regarding license numbers

provided by Morris to determine the owner of the vehicle that hit Morris. The exhibit shows that

an accurate license number was finally provided GEICO on December 7, 2014, which resulted in

GEICO obtaining Michael Christopher’s name. On December 10, 2014, GEICO sent Michael

Christopher a letter described as a “UM_10_Day_Letter.” On December 16, 2014, GEICO

received a police report of the accident which confirmed the license number Morris had provided

GEICO.

 On December 26, 2014, GEICO discovered that State Farm Policy #274114625 was in

effect on the Ford Taurus on the date of the accident. GEICO’s notes indicate that on that same

date, a call was made by GEICO to Morris “to advise No UM because Clmt was Insured w/State

Farm.” On December 29, 2014, a message was left by GEICO for Morris asking about his “filing

decision” under his “medpay claim.”8 The note states: “ob call to Robert morris for filing

decision…adv appears we have found cvg under clmt policy… would he like to close medpay

 7
 We are cognizant that, while Plaintiff’s Exhibit D was part of the summary judgment record, only portions
of the Exhibit were cited by Plaintiff in support of Plaintiff’s Statement of Uncontroverted Facts. The content of this
Exhibit is not necessary to our decision. It is only referenced herein to show that the Exhibit Morris submitted to
prove that the Ford Taurus qualified as a “hit-and-run” vehicle at the time Morris demanded uninsured motorist
coverage does not show Morris ever made a claim to GEICO for coverage of owner liability separate from operator
liability.
 8
 GEICO’s notes indicate that Morris had been advised by GEICO on November 25, 2014, that Morris had
$5,000 coverage in his GEICO Policy labeled “medpay” and that he could receive this even if the adverse carrier
policy covered the accident.

 15
claim under his policy at this time?...adv he had prev adv he did not want to file under his policy

unless he had to…adv him to give me a callback to let me know how to proceed w/medpay

claim…” A January 5, 2015, notation states: “closing letter b/c filing with a/c9 emailed to Dean

Morris.”

 Plaintiff’s Exhibit D shows that Morris’s attorney then called GEICO on January 7, 2015,

and documents were emailed by GEICO to the attorney on that same date. An internal GEICO

communication on January 17, 2015, states: FOLLOW UP WITH ATTNY ON FILE – DOES

INSD WISH TO USE HIS COLL COVG ON THIS POLICY?” On January 21, 2015, GEICO

called Morris’s attorney and GEICO’s notation on that date states: “Asked filing Dec Attny Sttd

that he will ask PH10 and Call me back.” An internal GEICO communication on January 23, 2015

states, “does ubi need to be reopened for insd? Has a/c state farm determine if there is covg or have

they disclaimed/denied coverage?” On this same date, documents were faxed by GEICO to State

Farm and GEICO updated its records to reflect that, “Adverse Carrier/State Farm was updated for

IP11 Christopher Michael.” GEICO also telephoned State Farm on this date and was given State

Farm Policy # 274114625. A notation was entered by GEICO that, “UBI does not need to be open

at this point.”

 On January 30, 2015, GEICO contacted State Farm inquiring as to whether “they have

coverage / accepted liab and handling damages to our insd Robert Dean Morris.” A message was

also left by GEICO with Morris’s attorney inquiring as to whether “insd is using coll on policy?

 9
 “A/c” is referenced elsewhere in the notations as signifying “Adverse Carrier.”
 10
 “PH” is referenced elsewhere in the notations as signifying “Policy Holder.”
 11
 “IP” is referenced elsewhere in the notations as signifying “Interested Party.”

 16
Did state farm accept liab and handle injs?” On February 10, 2015, GEICO called State Farm who

advised that “Clmt has an Active Policy – Good Covg.” but that liability was tentative because

State Farm had not yet spoken to their insured. State Farm advised it would make a liability

decision on February 24, 2015, regardless of whether they spoke to their insured. GEICO also

placed a call to Morris’s attorney on February 10, 2015. According to GEICO’s notes, the attorney

advised that they would speak to State Farm on the 24th “and attempt to file with them for the PD.”

GEICO then advised the attorney that it was “closing the Coll Claim” and that if Morris “needs to

file W/GEICO to call me back.”

 Four months later, on June 18, 2015, an inbound call was received by GEICO from

Morris’s attorney stating that Morris would like to file a “medpay claim.” He was advised by

GEICO that the claim was closed but that it could be reopened and reviewed. On June 23, 2015,

a demand for $5000 was received from GEICO by Morris’s attorney for MedPay under the GEICO

Policy. The MedPay claim was reopened and it appears a $5,000 payment was sent to Morris by

GEICO on June 24, 2015. The claim was then closed on June 24, 2015, for the reason that the

policy limits had been exhausted.

 The next notation by GEICO in Plaintiff’s Exhibit D occurs one year later, on June 13,

2016; Morris’s attorney called GEICO advising that a “demand was on the way for UBI.”12 On

this same date, GEICO called State Farm “to confirm if there is was good coverage for this

accident…she sttd they do have good cov and BI cov is 100/300…did rule out UMBI using

this…confirmed no UMBI or UMBI applicable for this accident.” A note by GEICO on June 17,

2016, indicates that a telephone call was made to Morris’s attorney and the attorney’s office was

 12
 “UBI” is referenced elsewhere in the notations as signifying “Uninsured Bodily Injury.”

 17
advised “that UMBI will not apply and he does not carry UIMBI…”, and that Morris’s attorney

would be receiving a fax to that effect.13

 Approximately three weeks after GEICO denied Morris’s demand (on the undisputed

grounds that State Farm, who insured both Michael and Bradley Christopher, had agreed to provide

coverage for the accident) Morris sued Michael and Bradley Christopher alleging in alternate

counts that they were each negligent operators of the Ford Taurus when it hit Morris; there was no

claim of negligent vehicle ownership. After conducting discovery, Morris removed Michael

Christopher as a defendant and retained Bradley Christopher, continuing to allege that Bradley

Christopher was negligently operating the Ford Taurus when it struck Morris. Although GEICO

was added at that time as a defendant in Morris’s new claim for uninsured motorist coverage

alleging an unidentified operator, there was never an assertion (before the demand, after the

demand, in any of Morris’s filings, or on appeal) that Morris’s claims against Michael and Bradley

Christopher involved anything other than operator negligence. Consequently, despite that the

operator had not been confirmed at the time of Morris’s demand, Morris was not entitled to

uninsured motorist coverage because the owner of the vehicle had been identified, and the owner’s

policy was agreeing to provide coverage for the alleged tort of operator negligence.14

 13
 The next notation in the GEICO file is recorded eight months later, on February 14, 2017, noting “company
has been served. No vex count. Staff can handle complaint. Complaint sees [sic] to allege def Bradley is at fault and
that a phantom was at fault.”
 14
 In Morris’s Statement of Additional Material Facts in Opposition to Defendant Geico’s Motion for
Summary Judgment, Morris’s Fact #15 states that, “On January 6, 2017, Bradley Christopher testified that he was the
one who used and possessed the Ford Taurus on November 22, 2014.” Although Bradley Christopher also denied
being involved in a motor vehicle collision on November 22, 2014, and denied operating a “hit-and-run motor vehicle
that collided with Plaintiff on November 22, 2014,” this does not negate Bradley Christopher’s admission to being
“the one who used and possessed the Ford Taurus” on the date of the collision. He was later identified by Colton
Massie as the offending driver. Moreover, although Bradley Christopher declined to admit to committing a hit-and-
run felony under oath, nothing in the summary judgment record supports that someone other than Bradley Christopher
had access to and/or drove his car that day. The Christophers never claimed that the car was stolen or driven by
someone else.

 18
 The test for requiring uninsured motorist coverage under Section 379.203, as discussed

above, is the underlying tort liability alleged and whether there was coverage for that particular

tort. Stotts, 118 S.W.3d at 665. If there is not, uninsured motorist coverage applies. The

underlying tort liability Morris alleged was always operator negligence. The fact that State Farm

was agreeing to cover the alleged negligent operation of the vehicle at the time of Morris’s demand

is, therefore, dispositive of Morris’s claim for uninsured motorist coverage for negligent operation

of the vehicle; there was a policy in effect covering the vehicle for the alleged tort of operator

negligence, and the company supplying coverage was not refusing coverage. Regardless of

Bradley Christopher’s denial that he operated the Ford Taurus at the time of the accident, at the

time of Morris’s demand, State Farm was agreeing to cover the vehicle as if Michael and Bradley

Christopher were the negligent operators. It was reasonable to assume, therefore, that when State

Farm confirmed that it was providing coverage for the alleged operator negligence associated with

the Ford Taurus’s collision with Morris on November 22, 2014, the operator had been identified

or certainly could be identified. The policy language requires that the operator “cannot” be

identified, not that the operator “has not” been identified. GEICO was, therefore, not required to

extend uninsured motorist coverage to Morris under Section 379.203 or the GEICO Policy.15

 15
 Compare Berry v. American Family Mut. Ins. Co., 995 S.W.2d 16 (Mo. App. 1999). In Berry, a cyclist
was injured by a Pizza Hut delivery driver whose liability insurance had lapsed. Id. at 17. A Pizza Hut insurance
policy through Kemper, however, insured the vehicle. Id. The plaintiff cyclist carried uninsured motorist coverage
through American Family. Kemper communicated with American Family, advising that the Kemper policy would
provide coverage for the accident. Id. American Family denied the plaintiff’s claim for uninsured motorist coverage
because “uninsured motor vehicle” in the American Family policy was defined as a vehicle “not insured by a bodily
injury liability bond or policy at the time of an accident.” Id. at 19. After the plaintiff received a settlement from
Kemper for the driver’s and Pizza Hut’s alleged negligence, he sued American Family for recovery of uninsured
motorist benefits and vexatious refusal to settle. Id. at 18. American Family’s motion for summary judgment, arguing
that uninsured motorist coverage did not apply because the operator’s vehicle was insured by Kemper, was denied.
Id. After the plaintiff prevailed against American Family at trial, American Family appealed. Id. We reversed, finding
that “the insured cannot settle a liability claim premised on coverage by the tortfeasor’s insurer and then recover
against the uninsured motorist carrier on the premise that there was no applicable liability insurance.” Id. at 18.

 19
 Morris argues in his reply brief that this application leads to the absurd result of a stolen

vehicle causing a collision and then fleeing the scene not being deemed a “hit-and-run vehicle”

under the GEICO Policy if the vehicle and its owner are later identified but the thief/operator is

not. Yet, Section 379.203 merely ensures insurance coverage for the alleged tort. If there is no

other coverage for that alleged tort, uninsured motorist coverage applies.

 We conclude that the circuit court did not err in granting summary judgment to GEICO on

Morris’s claim for vexatious refusal to pay when it found that the Ford Taurus that hit Morris’s

vehicle was neither an “uninsured motor vehicle” nor a “hit-and-run vehicle” as defined by the

GEICO Policy. Reviewing GEICO’s policy provisions as advocated by Morris and consistent with

the requirements of Section 379.203, the vehicle was not a “hit-and-run vehicle” under GEICO’s

policy because the owner of the vehicle had been identified and, irrespective of whether the

operator had been conclusively identified at the time of the demand, Morris was alleging operator

negligence by the owner and the owner’s policy was providing coverage for operator negligence.16

 Point I is denied.

 Point II – Election of Remedies

 In his second point on appeal, Morris contends that the circuit court erred in finding that

Morris’s claim for vexatious refusal to pay was barred by the doctrine of election of remedies.

Morris argues that his vexatious refusal claim is consistent with his settlement of the claim against

Bradley Christopher, does not involve a duplicate recovery, and GEICO was not entitled to

 16
 Morris argues that this is an unfair result because he had to “litigate” for three years to determine the
identity of the tortfeasor to his detriment. It is not apparent from this record why Morris needed to litigate the identity
of the tortfeasor when the uncontroverted facts reveal that Morris’s claims were for operator negligence and, prior to
Morris ever filing suit, State Farm had agreed that the Christophers’ policy would cover alleged operator negligence
associated with the Ford Taurus involved in the accident.

 20
judgment as a matter of law because the vehicle that collided with him qualified as a “hit-and-run

vehicle” at the time Morris demanded coverage. Further, Morris argues that GEICO’s refusal was

vexatious, Bradley Christopher continued to deny operating the vehicle that hit Morris, and the

settlement regarding the claim against Bradley Christopher did not involve the damages Morris

suffered as a result of GEICO’s vexatious refusal to pay.

 We note that Morris moved for summary judgment against GEICO, asking for payment of

the uninsured motorist benefits (along with damages for vexatious refusal to pay), after Morris

settled his claim of operator negligence against Bradley Christopher. It was Morris’s request for

the uninsured motorist benefits that the circuit court found barred by the election of remedies

doctrine.17 Morris has apparently abandoned his claim that he was entitled to both the settlement

proceeds and uninsured motorist benefits, stating in his appeal brief that, “While Plaintiff Morris

cannot now recover uninsured motorist coverage, Defendant GEICO is still liable for the damages

resulting from its vexatious refusal to pay.”18 Morris argues that those damages would not

constitute double recovery because they represent a different wrong.

 Because we determined in our review of Morris’s first point on appeal that the vehicle that

collided with Morris did not qualify as an “uninsured motor vehicle” or “hit-and-run vehicle”

under the GEICO Policy, and Section 379.203 cannot be interpreted to require uninsured motorist

 17
 This ruling is consistent with Section 379.203. We made clear in Stotts that, “In ruling that the
determination of whether the subject vehicle is uninsured, for purposes of § 379.203, is contingent on whether the
underlying tortfeasor is the owner or operator of the vehicle, we are mindful of the fact that it is not the purpose of the
statute to require dual coverage. In other words, § 379.203 cannot be invoked to allow recovery for damages otherwise
covered by a liability policy.” Id. at 667 n.3 (internal quotation marks and citation omitted). There was no “dual
coverage” in Stotts because there were two alleged underlying tortfeasors – a negligent operator and a negligent owner.
The alleged negligent operator had liability coverage for his alleged tort; the alleged negligent owner did not.
Consequently, the plaintiffs in Stotts were allowed to proceed with their claim for uninsured motorist coverage.
 18
 Morris’s counsel reiterated this position in oral argument.

 21
coverage to Morris on the facts of Morris’s case, Morris has no claim against GEICO for vexatious

refusal to pay his demand for uninsured motorist benefits. Where there is no claim for vexatious

refusal, there can be no damages associated with that claim.

 Point II is denied.

 Conclusion

 The circuit court’s judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 22